ALFRED BOOTH, Respondent, *v.* JEREMIAH S. BUNCE *et al.*,
Appellants.

Where B., as judgment creditor of a corporation of which M. was the managing
member, had levied his execution upon what he alleged to be the property
thereof, and B. was sued by one holding such property as purchaser at sher-
iff's sale under an execution against the property of a former corporation of
which M. was also a managing member, claiming that said property had
been fraudulently transferred by such former corporation to the latter, for the
purpose of defrauding the creditors of the former, *Held,*

That it was error for the court to instruct the jury that, if they believed B. had
acquiesced in the use and possession of the property, as his own, by M., after
the formation of the latter corporation, B. would be estopped from setting up
that it was the property of the latter corporation.

*It seems,* a defendant cannot entitle himself to a nonsuit, unless he first point out
the defects in the plaintiff's case entitling him to such nonsuit.

APPEAL from a judgment in favor of the plaintiff, and from
an order refusing a new trial at the General Term of the
Supreme Court of the second district.

In 1854, William Montgomery, William Garrabrant and
Isaac Reeve, were partners, under the name of William
Montgomery & Co., in the manufacture of steam engines
and machinery, at Yonkers, Westchester county. On the
1st January, 1855, Reeve sold out his interest in the co-
partnership to his partners, taking their notes for the price.
These notes were secured by mortgage on the partnership
property, which mortgage was duly filed. Subsequently said
notes and mortgage were transferred to the plaintiff. The
plaintiff brought an action against Montgomery and Garra-
brant, on two of the said notes, of $965.32 each, and recovered
judgment thereon for the sum of $2,268.38, which judgment
was duly filed and docketed in the office of the clerk of
Westchester county, on 17th December, 1859. An execu-
tion was issued on said judgment, to the sheriff of West-
chester, who levied on the engine in question, in the machine
shop formerly occupied by William Montgomery & Co., at
Yonkers. On the 22d December, 1859, and subsequently,
and on the 18th January, 1860, the sheriff sold said engine

by virtue of said execution, and the same was purchased by the plaintiff. On the 5th April, 1860, it was sent, by directions of the plaintiff, to 222 Pearl street, to be sold, and on the same day it was seized by virtue of an execution, in favor of the defendants, Bunce, Esler & Cobb, against the New York Steam Saw-mill and Machine Company, for which taking this action is brought.

It was proved by the defendants, that on the 20th October, 1857, a corporation was duly organized, under the general law regulating the formation of mining and other corporations. The certificate was signed by William Montgomery, Jesse M. Emerson, George D. Lund, Asahel R. Jones and Appleton Oaksmith, and the same was filed on the same day, in the office of the secretary of State, and a duplicate thereof in the office of the clerk of the city and county of New York. On the 21st October, 1857, William Montgomery and George D. Lund, who had become a partner in the firm prior to 4th July, 1856, sold and transferred to said corporation all the tools, machinery, &c., then owned by the firm of William Montgomery & Co., of which they were members, and thereafter the said corporation carried on the same kind of business previously carried on by said firm of William Montgomery & Co. Said Montgomery was president of the corporation.

The engine in question was manufactured by said corporation in 1859.

After the organization of said corporation, it became indebted to the defendants, Bunce, Esler & Cobb, for property furnished by them to said corporation, for which an action was brought and judgment recovered thereon, on 31st March, 1860, for the sum of $2,513.58. On this judgment an execution was issued to the sheriff of the city and county of New York, by virtue of which he levied on the engine in question, at 222 Pearl street, in said city, and on the 5th April, 1860, sold the same to the defendants, McLeod and Windle.

On the trial, the plaintiff insisted and gave evidence tending to show that the corporation was organized and the

property of the firm of William Montgomery & Co. sold and transferred to said corporation, and the business thereof thereafter carried on for the purpose and with the intent of cheating and defrauding the creditors of said firm.

On the first trial of this cause the plaintiff had a verdict, on which judgment was entered, and on appeal the said judgment was reversed by the General Term of the second district, and a new trial ordered with costs to abide the event.

The General Term reversed the judgment on the ground that the defendants, Bunce, Esler & Co., being *bona fide* creditors of the corporation, acquired a better title to the engine than the plaintiff, by virtue of a judgment and execution against Montgomery & Co. That although the plaintiff might allege fraud against the corporation he could not do so against its *bona fide* creditor dealing with the corporation without notice of the fraud.

The cause was again tried and the plaintiff was nonsuited. This judgment was affirmed by the General Term on the ground that evidence of fraud between Montgomery & Co. and the corporation was irrelevant and immaterial in this action against the *bona fide* creditors of said corporation.

The plaintiff appealed to this court, and the judgment of the General Term was reversed, and a new trial ordered on the ground that if the corporation was organized for the purpose of defrauding the creditors of Montgomery & Co., the transaction was fraudulent and void as against said creditors, and that prior to the purchase by plaintiff under this execution, his equities were equal to those of the creditors of said corporation; and as the plaintiff's purchase of the engine in question was prior in point of time to that of defendants, the title he acquired was superior to that of the defendants.

The cause was again tried, and on that trial the court charged the jury:

1st. That if they believed the corporation was organized, and the property of said firm transferred thereto, and the business thereafter carried on with the fraudulent purpose, on the part of Montgomery or Montgomery & Co., of preventing plaintiff from enforcing his debt, such organization

was absolutely void as to plaintiff, and he had the right to sell the engine, or at least Montgomery's interest in it, and his purchase gave him a superior right to that of Bunce & Co., although they may have dealt with the company without notice of the fraudulent intent, and were, in fact, *bona fide* creditors of said company.

2d. If the company was organized, and the property of Montgomery & Co. transferred to it, and the business carried on with intent to defraud the creditors of said Montgomery or said firm, the plaintiff was entitled to recover.

3d. That if the jury believed that the defendants, Bunce & Co., acquiesced in Montgomery's use and possession of the property as his own, after the formation of the corporation, they were estopped from now setting up that the property belonged to the steam mill company.

4th. That if the jury believed that the defendants, Bunce & Co., knew that the corporation was organized, transfer made and business carried on for Montgomery's benefit, to defraud his creditors, or those of Montgomery & Co., the plaintiff was entitled to recover.

5th. If the jury believed that in forming said corporation Montgomery intended to defraud his creditors, or those of Montgomery & Co., the plaintiff was entitled to recover to the extent of Montgomery's interest in the engine in question, even if the other corporators were ignorant of such fraudulent intent, and had no intention to defraud such creditors.

6. That if the jury believed that the other corporators of said steam mill company, in forming thereof, conspired with Montgomery or with Montgomery & Co., or aided them in forming said corporation with intent of defrauding the plaintiff, then the plaintiff would be entitled to recover the whole value of the engine.

To which several propositions the defendants' counsel excepted.

The defendants requested the court to charge the jury that Montgomery and the stockholders of the steam saw-mill could make no disposition of the property of said company

except subject to the debts of said company. The court refused so to charge, and the defendants' counsel excepted.

The jury rendered a verdict for the plaintiff, on which judgment was duly entered, and the General Term, on appeal, affirmed said judgment and denied a motion made by the defendants for a new trial.

*A. Thompson,* for the appellants.

*R. W. Van Pelt,* for the respondent.

MULLIN, J. When this case was before this court, on a former appeal, two questions seem to have been settled : 1st. That it was competent for the defendants to prove by way of defense to this action, that if the corporation was organized and the business thereafter carried on in its name, with the design of cheating and defrauding the creditors of William Montgomery or William Montgomery & Co., such organization and proceeding was absolutely void as against such creditors, and that a sale and purchase of the property in question by such a creditor would have given him title thereto, as against a creditor of the corporation who had given it credit without notice of such fraudulent purchase.

2d. That the *bona fide* creditors of the corporation, who had trusted it without notice of the fraudulent purpose, did not have an interest in its property superior to the creditors of the person whom it (the corporation) was formed to defraud.

These propositions are not now open for discussion. They must be taken as the law of the case ; and it only remains to inquire whether they have been properly applied by the court below, and whether any errors have been committed on the last trial of the cause.

The first point made by the defendants' counsel to reverse the judgment is that his motion to dismiss the complaint was improperly denied.

When the plaintiff rested he had proved the sale of the engine on an execution in his favor, against Montgomery & Co., the purchaser, by his agent, at Montgomery & Co.'s

shop; the seizure and sale of the same property thereafter, on an execution against the steam saw-mill company, and the value of the property. This was all he was bound, in the first instance, to prove, to make out a cause of action. There was no evidence up to that point of time, that the corporation had any interest whatever in the engine. The motion was therefore properly denied. But if the plaintiff had failed to make all the proof he was bound to make to entitle him to recover, it was the duty of the defendant to point out the defect, so that it might be supplied.

A defendant cannot omit to point out the defects in the case made by the plaintiff, and entitle himself to a nonsuit. Neither morals nor law will sanction any such practice.

When the debt on which the plaintiff's judgment was recovered was contracted, Montgomery and Garrabrant composed the firm of William Montgomery & Co., and they gave a mortgage on the partnership effects as security. That mortgage does not seem to have been enforced, and it ceases to be a fact of any importance in the case, except so far as it might bear on the equities between the parties.

When the transfer of the property was made by Montgomery & Co. to the corporation, Lund had succeeded to the interest of Garrabrant in the partnership property, and joined with Montgomery in the conveyance of it to the corporation.

Lund was not liable to the plaintiff on the notes he held against Montgomery & Co., nor was his interest in the joint property liable to be seized and sold on an execution issued on a judgment on said notes. The transfer, therefore, of his interest in the partnership property to the corporation cannot be fraudulent as against the creditors of Montgomery, or of Montgomery and Garrabrant. If, then, the transfer was made by Montgomery to the corporation, and if the corporation was formed and its business carried on for the purpose of defrauding the creditors of Montgomery, or of Montgomery and Garrabrant, the creditors of the latter did not become entitled to seize and sell the interest of Lund in the property.

Again, the corporation had carried on business after its organization, purchased property, contracted debts, manufactured engines and machinery with which Montgomery, or Montgomery and Garrabrant had nothing whatever to do. This property, thus acquired, could not be taken, upon any principle of law or equity, from Lund and his creditors, and applied to the payment of the debts of Montgomery, or of Montgomery and Garrabrant. If the corporation was swept away, the rights of the partners would revive to the property, unless it was proved that Montgomery was the owner of the whole property, which was not proved or pretended. On the contrary, on the formation of the corporation, certificates of stock were issued, and Montgomery and Lund retained but a share each, and transferred the residue to others. It would be monstrous injustice, under these circumstances, to allow the creditors of Montgomery, or of him and Garrabrant, to appropriate the property of the corporation, or of Lund, to pay their debts. Yet the sheriff sold to the plaintiff the whole engine, not the interest of Montgomery, or of Montgomery and Garrabrant therein. Whatever conclusion we may arrive at on the other questions in the case it is quite clear that the plaintiff was not entitled to recover the whole value of the engine.

If it were found that Lund united with Montgomery to form and conduct the partnership for the purpose of defrauding his (Montgomery's) creditors, that did not forfeit his title to his own property, or subject it to the payment of his (Montgomery's) debts.

I am not prepared to say that there is no evidence of fraud in support of the finding of the jury on that question. I must say, however, it is very slight indeed.

We must assume, for the purposes of the case, that the corporation was organized, and its business conducted with intent of defrauding the creditors of Montgomery, or of Montgomery & Co. It is not possible to say whether the jury has found that the business was conducted for the benefit of Montgomery alone, or for the benefit of Montgomery & Co.; nor is it perhaps important. As the plaintiff was a

creditor of Montgomery, he had the right to seize his individual property or his interest in any partnership of which he was a member. If the Montgomery & Co. whose creditors were intended to be defrauded, and for whose benefit the business of the corporation was carried on, was that composed of Montgomery and Lund, the plaintiff was not a creditor of that firm. If it was the firm of Montgomery & Garrabrant, then that firm as such had no interest in the property transferred to the corporation, nor was it in existence so as to be entitled to the profits of the business. This uncertainty as to the persons intended by the firm of Montgomery & Co., exposed the defendants to a finding against them, which, if the jury had been more fully instructed, might have been in their favor. But it is their own fault that more full and specific instructions were not called for.

The first branch of the judge's charge to the jury is in accordance with principles settled by this court in this case on the former appeal.

The third branch of the charge is erroneous : 1st. Because there is no evidence in the case which would justify the jury in finding that Bunce & Co. knew that Montgomery used or possessed the property of the corporation as his own, after its organization. It is proved that the firm of Bunce & Co. knew that Montgomery, as president of the company, gave its notes in renewal of the notes of Montgomery & Co. But this did not prove that he was conducting the business on his own account. It is conclusively proved that Montgomery never had the exclusive ownership or use of the property. If there was no corporation, then Lund owned an interest in the property and business ; if the corporation was valid, then it (the corporation) owned and Montgomery did not own it. 2d. Because acquiescing in such use and possession did not, in any manner, injure the rights of the creditors of Montgomery or of Montgomery & Co., and certainly did not destroy the right of Bunce & Co. to compel payment of their debt from the corporation ; and, 3d. Bunce & Co. were powerless to do anything to prevent Montgomery from using and possessing the property as his own. They were compelled to acquiesce,

and as long as the creditors of Montgomery & Co. could not require Bunce & Co. to act in their behalf, and so long as there was nothing that Bunce & Co. could do that would benefit said creditors, acquiescence was entirely proper, and it could not be made to impair the rights of Bunce & Co. to enforce their debt against the corporate property.

Without examining either of the other branches of the charge, or the requests to charge, I am of the opinion, for the reasons above stated, that the judgment of the General Term should be reversed and a new trial ordered, costs to abide event.

The other judges concurred in reversal on the ground that the third branch of the charge was improper.

Judgment reversed.