JOHN BINSSE, EXECUTOR, AND LOUISA LA FARGE, EX-
ECUTRIX, &c., OF JOHN LA FARGE, DECEASED, v. WIL-
LIAM L. WOOD.

*Lease—Surety—Arbitration—Substitution of Arbitrator by Principal—
Liability of Surety.*

Where a principal debtor has, according to the terms of his original con-
tract, submitted a matter in controversy to the determination of arbitrators,
and they have awarded upon the same, his surety on said contract is liable
upon said award, although he was not a party to the arbitration, and had no
notice of the same.

When the covenant of the surety is one of general indemnity, he is con-
cluded by the judgment against his principal touching such subject-matter,
unless he can, on being let in, show that his principal had a good defence to
the claim, etc.

ON the 27th of January, 1853, John La Farge and Charles
Wright entered into an agreement in writing and under seal,
by which La Farge demised to Wright the premises then built
up and known as Metropolitan Hall, and the premises adjoining,
fronting on Broadway, in the city of New York (on which La
Farge was then erecting a hotel), for the period of ten years,
from May 1, 1853, at the annual rent of $48,000, payable in
equal monthly payments of $4,000 each, "on the first day of
every month, after the rent should commence, as thereinafter
provided." And it was agreed that "the rent should commence
as soon as the said hotel should be finished and fit for occupancy,
as thereinafter provided, and Wright should then take possession."
La Farge agreed that the hotel should be built according to
certain plans and specifications. By the sixth article it was
provided that "Philip Burrowes and Charles E. Appleby, or, in
case of their disagreement, an umpire, to be selected by them,
shall determine when the payment of the rent shall commence,
according to the provisions of this indenture." And by the six-
teenth it is provided as follows: "In case the said Philip Burrowes
shall become unable or refuse to act in discharge of the powers

herein conferred upon him, it shall be the duty of the said Wright to appoint some person to be the successor of said Burrowes. And in case the said Charles E. Appleby shall become unable, or refuse to act in discharge of the duties herein conferred upon him, it shall be the duty of the said La Farge to appoint some person to be the successor of said Appleby; and such successors of the said Burrowes and of the said Appleby, respectively, shall be vested with all the rights and powers hereby conferred upon them." In case of total destruction by fire, the lease was to terminate. Annexed to the lease was an agreement bearing the same date (January 27, 1853), and executed under the hand and seal of the Defendant, in these words: "I, William L. Wood, of Hartford, Connecticut, in consideration of the execution of the foregoing lease by John La Farge, and of the sum of one dollar to me in hand paid by him, do hereby covenant and agree with him that Charles Wright, named in the said lease, shall well and truly pay the rent thereby agreed to be paid, during the period of one year from and after the time the rent shall commence, according to the condition of said lease; and in case of the failure of said Wright to make such payment, I covenant and agree, to and with the said La Farge, that I will pay the same to the extent of $10,000, less one-fifth of what said Wright may have previously paid on account of such rent. Nothing herein contained shall be regarded as an assumption of liability on my part, beyond that sum."

On the 8th of January, 1854, the buildings on the demised premises were destroyed by fire, and, being burned to the ground, became wholly untenantable, which terminated the lease.

Up to the time of the fire, it had not been determined when the rent should commence. Philip Burrowes did not act. It was proved that he went to Europe on the 5th of January, 1855, as an absconding debtor, and had not returned at the time of the trial.

On the 22d of February, 1855, Wright, the lessee, by an instrument in writing, executed under his hand and seal, in accordance with the terms of the sixteenth clause of the lease,

appointed one Peter D. Loucks to be the substitute or successor of Burrowes, and Loucks, by an endorsement in writing, consented to act, pursuant to the appointment.

On the 2d of December, 1856, Appleby and Loucks notified La Farge and Wright, the landlord and tenant, in writing, of the time and place when they would hear the parties in reference to the time when the rent commenced.

At the time and place appointed they met and were sworn, and, after hearing the parties, signed a written decision in these words : " At the time and place appointed in the foregoing notice, the undersigned met and proceeded to investigate the question as to the time when the payment of the rent should commence, according to the provisions of the lease referred to in the said notice; and having been attended by the parties, and having heard all the proofs and allegations which they or either of them had to offer in reference to the said question, and the said question having been fully submitted to us for decision, we do hereby decide and determine that the said rent should commence on the 15th day of November, 1853, and that the said rent did begin to accrue on that date."

The cause was tried at a Circuit Court on the 23d of November, 1864.

On the trial the facts appeared as above stated. The Defendant's counsel objected to the introduction of the evidence of the substitution of Loucks, his consent to act, the notice of hearing, and the decision, upon the ground that it had not appeared that Philip Burrowes, named in the lease, had become unable or refused to act, nor that due diligence to charge Defendant as surety had been used by Plaintiffs, nor that notice had been given to Defendant of any intention to make such appointment, or of its having been made. These objections were overruled by the Court, and the Defendant's counsel excepted. He also moved to dismiss the complaint, without assigning any grounds, which motion was denied, and he excepted.

The Court then directed the jury to find a verdict for the Plaintiffs, to which the Defendant's counsel excepted.

Under the instruction of the Court, the jury rendered a verdict in favor of the Plaintiffs for the sum of $12,245.55, being the amount claimed (viz., $6,969.83, for fifty-three days' rent, from November 15, 1853, to the time of the fire on January 8, 1854, at the rate of $48,000 per annum), with interest from the 8th day of January, 1854.

The Court directed the exceptions of the Defendant to be heard, in the first instance, at the General Term, and stayed judgment on the verdict in the meantime.

The General Term granted a new trial, unless the Plaintiffs consented to reduce the recovery by casting interest on the amount of rent due, only from the date of the decision of Loucks and Appleby, on the 23d day of January, 1857, instead of from the day of the fire (8th January, 1854), as found by the verdict.

This the Plaintiffs consented to do, and the judgment was entered in accordance with such reduction. From that judgment the Defendant appeals to this Court.

*Albert Mathews* for Appellant.

*Samuel Hand* for Respondents.

HUNT, CH.J.—If the parties to this action were La Farge and Wright, scarcely a question could be raised. They made a lease and contract, by which it was agreed that certain buildings should be finished and fitted up by La Farge; that the same should be taken by Wright for a designated period, at a stipulated rent; and that the time when the rent should commence to run should be fixed by the mutual award of Philip Burrowes and Charles E. Appleby, and the intervention of an umpire, if needed. They further agreed upon a mode of obtaining a new arbitrator, in case either of those named should refuse or become unable to act. At a subsequent period, they deemed Burrowes unable to act, appointed or agreed to the appointment of Mr. Loucks in his stead, produced their witnesses and made their proofs before the two arbitrators thus appointed, and an award was made fixing the time when the rent should begin to run. The time of the commencement of the rent being thus fixed, the rent per month being specifically agreed

upon, and the termination of the lease, by the burning of the building on the 8th of January, 1854, being assented to by both parties, the amount due was a matter of figures merely. This suit, however, is against Mr. Wood, not the original lessee, but a surety for the payment of a certain amount of the rent by Wright, during the first year. It is insisted that his position presents different questions.

It is argued that, by the terms of the lease, the rent was not to commence until the hotel was finished fit for occupancy, and that that event has never occurred; also that the Defendant could not be made liable for rent, by any determination of the arbitrators, until the landlord had first put the tenant in possession, and this event, it is said, has never occurred. The Defendant further insists that, although Wright may be concluded by the award, by reason of his appearance and participation in the proceedings before the arbitrators, that he, being a surety, and having taken no such part, and having no notice thereof, is not bound by them.

I apprehend that the Defendant is in error in these positions, and that he occupies the same ground, and no other, as that occupied by Wright himself. This is one of those cases so clearly defined by Smith, J., in Bridgeport Insurance Company v. Wilson (34 N. Y. R. 275), where the Defendant makes his liability to depend upon the result of a litigation between other parties. See also Lee v. Clark (1 Hill, 56; Rapelye v. Prince, 4 Hill, 119; Aberdeen v. Blackmar, 6 Hill, 324). The rule is thus laid down: "Covenants to indemnify against the consequences of a suit are of two classes: 1. Where the covenantor expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result; and 2, where the covenant is one of general indemnity merely. In cases of the first class, the judgment is conclusive evidence against the indemnitor, although he was not a party, and had no notice, for its recovery is the event against which he covenanted. In those of the second class the rule already stated applies, to wit, that the want of notice does not go to the cause of action, but the judgment is primâ facie evidence only against the indemnitor, and he

may be let in to show that the principal had a good defence to the claim." The result of the litigation to which the present Defendant committed himself is binding upon him, without notice, leaving him, however, at liberty to show fraud, collusion, and perhaps that there was a good defence which the party neglected to interpose. The judgment—a decision—is evidence against. him, and, until attacked by one of these modes, is conclusive. It would scarcely be argued that Wright could insist that he had never had possession, or that the buildings had never been finished, and that therefore the award did not bind him. The authorities cited show that Wood is equally bound by this decision with Wright, subject to the qualifications stated.

The Defendant Wood expressly stipulated that Wright should pay the rent " during the period of one year from and after the time the rent shall commence, according to the condition of said lease." That condition provided that the commencement of such rent should be ascertained by the award of referees, selected and to be selected by La Farge and Wright, and in no other mode. The Defendant therefore agreed that the commencement of the rent should be fixed by the referees then to be chosen. Their decision settles that period, as to him, as well as to Wright.

The other and preliminary questions are no more open in the one case than in the other. The instruments and proceedings by which the time was fixed were necessarily given as evidence. In no other manner could the liability be fixed. They were binding upon the Defendant, subject to his right of attack, as I have before explained (Story on Agency, §§ 58, 59, 60, 70, 85). The same principle furnishes the answer to the allegation of error, in the substitution of Loucks as a referee in place of Burrowes. The doctrine which binds the Defendant to the result of the litigation between La Farge and Wright also binds him as to the means by which that result was effected (Story's Ag., sup.).

The power to determine the question of inability or refusal was extended by the Defendant to Wright, as was the production of evidence, and other proceedings on the hearing before the referees. As an original question, too, I see no difficulty on this

point.   At the time the question was to be investigated by the ref-
erees, Burrowes was absent from the United States—had left the
country a year previously, and as an absconding debtor.   This
presented a case of inability to act.

The Defendant further insists that there was error in the refu-
sal of the Court to dismiss the complaint, at the close of the
evidence.   The record is this : " The Plaintiff then rested his case.
The counsel for the Defendant then moved to dismiss the complaint.
The Court overruled the motion, and the Defendant excepted."
The Defendant now insists that it was not proved that the hotel
was completed, or that Wright had entered into possession, and
that this proof was essential to the right of recovery.   An answer
has already been made to this suggestion.   It would be sufficient
also to say that a motion for a nonsuit, or a motion to dismiss the
complaint, to be effectual, must specify the defects supposed to
exist.   It is not sufficient to make a general objection.   In the
present case, the proofs which it is said are not presented might
have been supplied without difficulty, and the objection thus ob-
viated.   We have repeatedly held that this is not sufficient (see
Shotwell *v.* Mali, 38 Barb. 445—affd. 36 N. Y. 200, sub-nom.
Bruff *v.* Mali).

It is said that the judgment was erroneously entered for a larger
amount than was authorized by the General Term.   This is not
the subject of an appeal to this Court, but should have been cor-
rected by motion made in the Court below.

Judgment should be affirmed, with costs.


WOODRUFF, J. (dissenting)—A surety is entitled to have the
parties held to a strict observance of all the conditions of his liability.

These conditions are not to be construed to his prejudice, be-
yond their plain and ordinary signification.

The consent of his principal to any departure from the terms of
the engagement, for the performance of which the surety is bound,
does not bind the surety.

The maxim, " In hoc fœderi non veni," may always be invoked
by the surety, and he is entitled to its protection.

By the terms of the lease stipulating the rent (payment of which was guaranteed by the Defendant), Philip Burrowes and Charles E. Appleby were to determine when it should commence.

No warrant was given to appoint any other person to determine that period, unless they, or one of them, were unable or refused to act.

There is some reason for saying that the rent would not commence until it had been so fixed. But it is sufficient for this case to say, that there was an utter failure to show that Burrowes either refused or was unable to act in the matter.

· He was here for a year after the buildings had burned, and thirteen and a half months after the day when, it is claimed, the tenant began to occupy so as to be chargeable with rent.

He was not, so far as appears, applied to by the Plaintiffs' testator to act in the matter.

And, if it were conceded that his departure for Europe, at the end of thirteen and a half months, would then constitute inability to act, it would not prove inability or refusal within the reasonable construction of the lease.

If the lessor be not held bound to cause the time to be fixed *before* the rent can be said to begin to accrue, he was bound to do so within a reasonable time thereafter. And if he chose to wait more than a year without taking any step for the purpose, he did so at his own peril, so far as the surety was concerned.

Two things were important to the surety, the advantage of which he lost by the delay. First, that the rent should be paid *monthly*, according to the stipulation of the tenant contained in the lease. Second, that the time when it should commence should be fixed by Mr. Burrowes (in conference with Mr. Appleby) ; and it is to be assumed that he had special confidence in the judgment of Mr. Burrowes in that regard.

As to the first, the designation of the time when rent should begin was not fixed until January 23, 1857—more than two years after the building was burned and the lease terminated. And meantime the surety had no notice of any default of his principal ; and what is more important, there was not, in that
4

whole interval of two years and two months, a moment when the surety could have paid the debt and called upon his principal to reimburse him; and when the matter was finally submitted to Appleby, and the person substituted by the tenant in the place of Burrowes, the question was simply and only, how much is due to the lessor for an occupation which, if it ever began, had ceased two years before?

This was not according to the fair meaning and intent of the contract.

Nor is it any answer to this point to say that it was the duty of the tenant to bring on the meeting of the referees or arbitrators. It was equally in the power of the lessor, and if he wished to avail himself of the stipulations dependent thereon, he should have acted.

If he had called up Burrowes and Appleby, and they had neglected, and, by delay, practically refused to act—or if Burrowes had done so, and the tenant (Wright) had neglected or refused to appoint another, a very different question would have arisen.

And as to the second, he was entitled, at least, to have the period of commitment fixed within a reasonable time, so that he might not lose the judgment and opinion of the person selected and approved by himself.

If it was competent for the lessor to delay one year, Burrowes being here and willing to act, I see no reason why he might not wait five years, and take the chance of Burrowes' death or other event that might deprive the Defendant of his services, and thence induce the tenant to select another.

The assent of the tenant cannot affect the surety, if his conduct was not according to the just construction of the lease, and I think that it was not.

It is suggested that the exception taken by the Appellant on the trial does not cover this point, because it was general to the instruction of the Court to find for the Plaintiff, *without* any request to submit any question to the jury.

There was no dispute about the facts—no conflict of evidence—

and therefore there was no question to be submitted on which the Appellant could, with propriety, ask to be submitted.

It was a mere question of law upon facts not controverted, or, at least, not left in doubt by any conflict of evidence, whether the Plaintiff was entitled to recover; and to the decision of that question a proper exception was taken.

Besides, the answer of the Defendant had denied that Burrowes was unable or refused to act; and denied that the tenant had any power to appoint a substitute, or that the determination of Appleby and such substitute was binding upon him.

And thereupon, when the appointment of the substitute was offered in evidence, he objected to it as evidence against him, on the ground that it did not appear that Burrowes had become unable or refused to act, or that the Plaintiff had used due diligence to charge him as surety.

And the like objection was made to the decision or award made by Appleby and the substitute for Burrowes.

These exceptions were sufficient to raise the question, whether such substitute was duly appointed to fill the place of Burrowes.

In my opinion the judgment should be reversed, and a new trial ordered.

All affirm, except WOODRUFF, J., dissenting, and MASON, J., not voting.

Affirmed.

JOEL TIFFANY,
State Reporter.