MARY CRAPO, as Administratrix of the Estate of HENRY CRAPO, Deceased, Appellant, v. THE CITY OF SYRACUSE, Respondent.

1. NEGLIGENCE — ACTION AGAINST CITY TO RECOVER FOR NEGLIGENTLY CAUSING DEATH IS AN ACTION FOR PERSONAL INJURIES WITHIN STATUTE REQUIRING NOTICE AND LIMITING TIME FOR COMMENCEMENT OF ACTION. An action by an executor or administrator under section 1902 of the Code of Civil Procedure "to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused," is an action for personal injuries within the meaning of chapter 572 of the Laws of 1886 requiring that an action "for personal injuries" when brought against any city having a population of 50,000 or more must be "commenced within one year after the cause of action therefor shall have accrued," and that notice "of the intention to commence such action and of the time and place at which the injuries were received" must "have been filed with the counsel to the corporation or other proper law officer thereof within six months after such cause of action shall have accrued."

2. CAUSE OF ACTION DOES NOT ACCRUE UNTIL APPOINTMENT OF EXECUTOR OR ADMINISTRATOR. The cause of action, however, does not accrue until the appointment of the executor or administrator, and, therefore, where an administratrix was not appointed until over sixteen months after the death of her decedent, the filing of the statutory notice within two months and commencement of the action within five months thereafter is a sufficient compliance with the requirements of the statute.

*Crapo* v. *City of Syracuse*, 98 App. Div. 376, reversed.

(Argued December 14, 1905; decided January 23, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 15, 1904, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion of O'BRIEN, J.

*Thomas Hogan* for appellant. An action to recover for death loss is not an action for personal injuries, but a new cause of action given by statute. (*Matter of Meekin* v. *B. H. R. Co.*, 164 N. Y. 145; *Whitford* v. *P. R. R. Co.*, 23 N. Y. 465; *Snedecker* v. *Snedecker*, 164 N. Y. 58; *Louisville*

& *St. L. R. Co.* v. *Clarke,* 151 U. S. 696.) Whether or not the action under section 1902 of the Code is an action for personal injuries, the cause of action did not accrue within the meaning of the language of that section until the administrator was appointed. (*Steen* v. *N. F. Ins. Co.,* 89 N. Y. 315; *Ames* v. *N. Y. U. Ins. Co.,* 14 N. Y. 253; *Mayor* v. *H. F. Ins. Co.,* 39 N. Y. 45; *Hay* v. *S. F. Ins. Co.,* 77 N. Y. 235; *Matthews* v. *A. C. Ins. Co.,* 9 App. Div. 339; *Barnes* v. *City of Brooklyn,* 22 App. Div. 520; *Titman* v. *Mayor, etc.,* 57 Hun, 469; *Bucklin* v. *Ford,* 5 Barb. 395; *Wenman* v. *M. Ins. Co.,* 13 Wend. 267; *Cohen* v. *Hymes,* 64 Hun, 54.)

*Walter W. Magee* for respondent. No notice of the intention to commence an action herein was filed with the corporation counsel within six months, nor was the action begun within one year, from the time the cause of action accrued. (L. 1886, ch. 572.) The cause of action, if any, accrued herein immediately upon the death of the plaintiff's intestate. (*Titman* v. *Mayor, etc.,* 32 N. Y. S. R. 1016; *Maxon* v. *D., L. & W. R. R. Co.,* 112 N. Y. 559; *Hegerich* v. *Keddie,* 99 N. Y. 267; *Stuber* v. *McEntee,* 142 N. Y. 203; *Weber* v. *T. A. R. R. Co.,* 12 App. Div. 523; *Lang* v. *H. S., etc., R. R. Co.,* 75 Hun, 154; *Meekin* v. *B. H. R. R. Co.,* 164 N. Y. 149; *Snedeker* v. *Snedeker,* 164 N. Y. 63; *Pitkin* v. *N. Y. C. & H. R. R. R. Co.,* 94 App. Div. 35; *Littlewood* v. *Mayor, etc.,* 89 N. Y. 28.)

CULLEN, Ch. J. Though I concur in reversing the order of the Appellate Division and in the affirmance of the judgment of the trial court, I am of opinion that the action is one for personal injuries within the meaning of chapter 572 of the Laws of 1886. Certainly it was an injury to the person of the deceased that gave rise to the cause of action, and it is not necessary to constitute the action one for personal injuries that it should be for injuries to the person of the plaintiff. Unless this is so neither an action by a husband for injuries to his wife nor by a parent for injuries to a child would fall

within the provisions of sections 382 and 383 of the Code of Civil Procedure, and it would follow that while an action for personal injury must be brought by the wife within two years the husband would have ten years in which to bring his action for the loss of her services. (Sec. 388.) Nor does the fact that the damages in the action given by statute are limited to pecuniary loss affect the question. The same rule obtains to a certain extent in an action by the husband for the loss of services of his wife, which, so far as pecuniary loss is involved, survives the husband's death and passes to his personal representatives. (*Cregin* v. *Brooklyn Crosstown Ry. Co.*, 75 N. Y. 192.) The case comes plainly within the spirit of the statute as well as its letter, for every reason for requiring notice of the circumstances of the accident to be given to the municipality applies with as much force to an accident resulting in death as to one where the consequences have been less grave.

I am of opinion, however, that the plaintiff's cause of action did not arise until her appointment as administratrix for the reason stated by Justice BRADLEY in *Barnes* v. *City of Brooklyn* (22 App. Div. 520), and that, therefore, the notice required by the statute of 1886 was seasonably served and the action seasonably brought. If the results which follow that construction of the law of 1886 were such as suggested in the dissenting opinion written on this appeal, I think they would constitute a strong objection to that interpretation, but I am of opinion that no such results can follow. The limitations provided in the law of 1886 are not substitutional for the provisions of the Code, which are in no respect repealed, but cumulative. . An action for personal injuries against a city of more than fifty thousand inhabitants must be brought in compliance not only with the statute of 1886 but with the provisions of the Code. Section 1902 of the Code requires an action by personal representatives to recover damages for their decedent's death to be brought within two years after that death. This effectually cuts off stale claims. In the present case the action was brought within the Code period.

O'BRIEN, J.   The plaintiff recovered a judgment against the defendant for damages in causing the death of her husband and intestate.   The Appellate Division has reversed the judgment, as stated in the order, " upon questions of law only, the facts having been examined and no error found therein," so that every material fact which has some evidence to sustain it is deemed to be established by the verdict and the affirmance on appeal.

The intestate was killed while in the service of the defendant by an explosion of dynamite on the 22d of December, 1899.   The plaintiff was appointed administratrix on the 8th day of May, 1901.   This action was commenced on the 9th day of December, 1901, and the notice required by statute to be served was not filed with the corporation counsel until the 25th day of June, 1901.   It will be seen, therefore, that the statutory notice was filed with the defendant's counsel within two months after the plaintiff's appointment as administratrix.   The action was commenced within twenty months after the accident and death and within five months after letters were issued.

The learned court below held that the notice of the plaintiff's claim was served too late and that the action was not commenced in time, and so, for both reasons, the plaintiff's right to commence the action was barred by statute.   All this is deduced from a construction of the statute, chapter 572 of the Laws of 1886, which reads as follows :

" No action against the mayor, aldermen and commonalty of any city in this state having fifty thousand inhabitants or over, for damages for personal injuries alleged to have been sustained by reason of the negligence of such mayor, aldermen and commonalty, or of any department, board, officer, agent or employee of said corporation, shall be maintained, unless the same shall be commenced within one year after the cause of action therefor shall have accrued, nor unless notice of the intention to commence such action and of the time and place at which the injuries were received shall have been filed with the counsel to the corporation or other proper law officer

thereof within six months after such cause of action shall
have accrued."

It will be seen from a careful reading of this statute that it
relates only to actions for damages for *personal injuries*.  It
will also be seen that the limitation commences to run within
six months and one year, respectively, after the cause of action
*shall have accrued*.  The learned court below has held that
this is an action to recover damages for a personal injury, and
also that the limitations commenced to run, not from the time
that the plaintiff was appointed administratrix, but from the
time of the death of her husband.  So that if, for any reason,
administration cannot be obtained until more than six months
after the death of the intestate, the action is barred and there
can be no recovery.  I think that both of these propositions
are founded upon a legal error and upon an extreme and
unwarranted construction of the statute.

This action was unknown to the common law, and is purely
a creation of statute.  The common law never designated such
a case as an action for personal injuries, nor has any statute
ever called it by that name, or treated it as such.  It is defined
by the Code as " an action to recover damages for a wrongful
act, neglect, or default, by which the decedent's death was
caused, against a natural person who, or a corporation which,
would have been liable to an action in favor of the decedent, by
reason thereof, if death had not ensued.  Such an action must
be commenced within two years after the decedent's death."
(Code Civ. Proc. sec. 1902.)  It requires a good deal of refined
and subtle argument to prove that such a case is an action for
damages for personal injuries.  What person before the court
in such cases has sustained an injury which is personal, within
the meaning of that term as used in the law?  By section 382
of the Code, an action for a personal injury may be com-
menced within six years, and when the injury is caused by
negligence within three years.  (§ 383.)  In framing these
limitations it is plain that the legislature never supposed that
an action such as the one at bar was included in the term
"personal injury."  An action for damages for personal

injury is an action wherein a living party who is before the court has sustained an injury to his person.

It is equally clear, it seems to me, that the cause of action in this case did not accrue until the appointment of the plaintiff as administratrix. By section 415 of the Code of Civil Procedure, it is provided that limitations " must be computed from the time of the accruing of the right to relief by action * * * to the time when the claim to that relief is actually interposed by the party, as a plaintiff or a defendant, in the particular action or special proceeding." This is a plain provision that the right of action does not accrue until some one is in a position to bring and maintain the action, and the limitation must be computed from that time up to the time that the action is actually commenced. The notice which the statute requires to be served within six months after the cause of action has accrued must contain a statement that the party giving the notice *intends to commence an action.* The absence of such a statement vitiates the notice. (*Curry* v. *City of Buffalo,* 57 Hun, 25.) Who is to give the notice? It is very obvious that inasmuch as no one can bring such an action except a personal representative of the decedent the notice must come from him, and of course he cannot give any such notice until his appointment. A notice served by a stranger, or any one else except a personal representative of the deceased, who alone is entitled to bring the action, would be clearly insufficient, and the defendant could treat it as a nullity. These considerations, that are fairly deduced from a reading of the statute, and other statutes *in pari materia,* point clearly to the conclusion that the cause of action does not accrue until the personal representative of the decedent has been duly appointed.

In the opinion of the learned court below some cases are cited from the courts in this state as in support of a contrary proposition. These cases have been carefully examined and it is perfectly safe to say that none of them touch the question in this case. In none of them was the question in this case at all involved. One of the authorities cited is a recent

decision from this court (*Matter of Meekin* v. *B. H. R. R. Co.*,
164 N. Y. 145), where it was held that a cause of action result-
ing in death, brought by the personal representative of the
deceased, survives the death of the sole administrator, who was
also next of kin — a proposition that, obviously, has nothing to
do with this case.   A statement in the opinion of Judge VANN,
at page 148, throws some light upon the nature of the action.
" While a personal injury must cause the death, damages are
allowed, not for an injury to the person deceased, but for an
injury to the estate of the beneficiary."   So we have here the
plain declaration of this court that an action, such as that at
bar, is not an action to recover damages for a personal injury,
either to the decedent or to the beneficiary named in the
statute, but an action to recover damages to the estate of the
latter.   There is one case cited from a Kentucky court which
apparently sustains the decision below, but in the same opin-
ion another case is cited from the Supreme Court of Con-
necticut which holds directly the other way.   So that these
decisions in other jurisdictions may be fairly offset one
against the other.

But the decisions in this state are clear and cover the
precise point.   In *Barnes* v. *City of Brooklyn* (22 App.
Div. 520) the question as to the time when a cause of action
accrued under this statute was involved, and it was not
embarrassed by any other question in the case.   It arose upon
a demurrer, and so the controversy was reduced to a pure
question of law.   The opinion of the court was delivered by
Justice BRADLEY, formerly a member of this court, and it
bears upon its face the evidence of that careful research and
examination and deals with the question throughout with that
discrimination and broad common sense for which he was so
justly distinguished.   I am not able to make any argument
on this question that would present it in a more clear and
simple light.   The learned judge commences by inquiry as to
the meaning of the word " accrue," as found in the law dic-
tionary, and he pursues the inquiry through the earlier

26

decisions of this state and the decisions of the English courts, down to the latest utterance of this court that could throw any light upon the subject; and he reaches the conclusion, in which the other members of the court apparently concurred, that it was always the law of this state that a cause of action did not accrue until some person was in existence capable of bringing and maintaining the action. It is unnecessary to make further reference to the authorities cited by the learned judge, but they seem to completely cover the point. The construction placed upon the statute by the learned court below, wherein it was held that the plaintiff's action was barred, seems to me to be erroneous.

But the learned counsel for the defendant, upon the argument in this court, has attempted to sustain the judgment upon certain exceptions which are found in the record and which do not appear to have been noticed by the court below at all. This court ought not, I think, to go out of its way to sustain a judgment upon some debatable point that was not considered or passed upon by the court below. The exceptions in this case rest entirely upon the ruling of the trial court refusing to nonsuit the plaintiff. In other words, this branch of the argument must assume that there were no questions in the case to submit to the jury. It will be noted that most of the grounds stated by counsel in his motion for a nonsuit were so general that they presented no question of law in this court, or they were of such a character that the questions presented were for the jury. A motion for a nonsuit is ineffectual to raise any question in this court, unless the grounds upon which it is based are specified. The defect in the plaintiff's case should be pointed out so that he may supply it if he can. (*Gerding* v. *Haskin*, 141 N. Y. 514, 520; *Sterrett* v. *Third Natl. Bank of Buffalo*, 122 N. Y. 659; *Quinlan* v. *Welch*, 141 N. Y. 158; *Booth* v. *Bunce*, 31 N. Y. 246; *Binsse* v. *Wood*, 37 N. Y. 526; *Thayer* v. *Marsh*, 75 N. Y. 340; *Ross* v. *Caywood*, 162 N. Y. 259.) There are numerous grounds stated in the motion for a nonsuit in this case, but only two of them raise any question of law for

this court.    One is that the defendant had not been guilty of
any negligent act or omission, and the other was that the
decedent had not been shown to be free from contributory
negligence.    These grounds are quite general, but I will
assume that they were sufficient to raise the question of law
which will now be briefly discussed.

The defendant cannot prevail in this court without show-
ing that there was absolutely no evidence to submit to the
jury on these propositions.  The question in this case was
not that the deceased was ignorant of the danger incident to
the general use of dynamite as an explosive in blasting, but
whether he was ignorant of the method of thawing it out
when frozen, and if he was, whether the master gave him
any instructions as to the method adopted and which resulted
in his death.    The precise issue which the plaintiff presented
was that her husband was set to work by the defendant, not
in firing off and exploding dynamite, but in thawing it out
and preparing it for use, a work he had never been engaged
in before and by a process with which he was unfamiliar, and
that he received no instructions from the master or any one
else as to the danger involved, or as to the means of guarding
against it.

The law applicable to such an issue of fact is perfectly
plain and was presented to the jury by the learned trial judge
in substantially the language of the authorities.    " The mas-
ter must, therefore, give notice to his servants of all perils
to which they will be exposed, other than such as they
should, in the exercise of ordinary care, have foreseen as
necessarily incidental to the business, in the natural and ordi-
nary course of affairs, though more than this is not required
of him.    It makes no difference what is the nature of the
particular peril, or whether it is or is not beyond the mas-
ter's control.    Thus the master is responsible for his omission
to warn his servant against the risk of a felonious attack upon
him, by the master's enemies, if he was himself aware of the
danger.    And it is not enough for the master to use ordinary
care and pains to give such notice.    Ordinary care requires

that he should actually give the notice, and not merely try to give it. If, therefore, he fails to give such notice in terms sufficiently clear to call the attention of his servants to the peril of which he is aware, he is liable to them for any injury which they suffer thereby in ignorance of that peril and without contributory negligence." (Shearman & Redfield on Negligence, § 203.) The same rule is laid down in substantially the same language in the United States Supreme Court and in this court. (*Mather* v. *Rillston,* 156 U. S. 391; *Gates* v. *State of N. Y.,* 128 N. Y. p. 226; *Simone* v. *Kirk,* 173 N. Y. p. 13; *Pantzar* v. *Tilly Foster Iron M. Co.,* 99 N. Y. 368; *Benzing* v. *Steinway & Sons,* 101 N. Y. 547; *Finn* v. *Cassidy,* 165 N. Y. 584.) In *Simone* v. *Kirk* (*supra*) Judge VANN states the principle in a few words: "Certain work is inherently dangerous, and yet the master has the right to hire servants to do it. In such cases, however, unless the danger is obvious to an ordinary observer, it is his duty to give them due warning, so that they may refuse to work if they do not wish to run the risk, and proper instructions, so that if they enter upon the work they may be able to take care of themselves."

It has already been observed that the only question presented to the jury was the question arising upon this rule of law. The evidence in the case upon the part of the plaintiff was substantially without a conflict as to the fact that the deceased was set to work thawing out dynamite, having had no experience whatever at that work. It would be useless, I think, to argue that there was no evidence for the consideration of the jury on that point. As to the contributory negligence of the deceased there is no evidence in the record that would warrant the trial judge in taking that question from the jury. The only basis for imputing contributory negligence to the deceased is to be found solely in the fact that he obeyed the master's representative in engaging in a work that he was ordered to perform, but as to which he was without any experience. It is quite unnecessary to argue that such conduct on the part of the servant does not constitute con-

tributory negligence as matter of law. The master's repre-
sentative not only omitted to give the servant instructions or
warning as to the nature of the work, but assured him that
the operation of thawing the dynamite was perfectly free
from danger. The method adopted by the defendant was to
have it placed in a galvanized iron pail, which was put inside
of a sheet-iron furnace, and the furnace having been heated
on the outside, the heat was communicated to the dynamite,
and, on the occasion in question, caused it to explode. There
was evidence in the case from experts and other witnesses in
behalf of the plaintiff tending to show that this method was
not a safe one to adopt, and, moreover, it appeared that the
furnace used on the occasion was, to use the language of the
witnesses, "rotten, used up and burned out," it having been
used for a long time. So that when the case is carefully
examined it will be found that there was proof for the jury
tending to establish the fact that the master had failed in the
performance of his duty to the deceased, and, therefore, it
would have been error on the part of the trial judge to take
the case from the jury.

The perusal of this case will show how frequently human
life is sacrificed for want of a little care and foresight and,
possibly, a little extra expense. The proof tends to show that
there were at least three methods of thawing out dynamite.
The safest and most simple method in general use, suggested
by the evidence, was to bury the dynamite in a heap of manure
and pour hot water on it once. The heat and moisture would
then extract the frost and render the explosive fit to handle
and use. Instead of doing that the master in this case
improvised what is called a sheet-iron furnace, old, rotten and
broken, without either top or bottom. Then placing the
dynamite in a pail inside and kindling a fire outside the fur-
nace, with apparently nothing to keep the excessive heat and
flames from the dynamite, with such a plan of doing such
dangerous work an explosion was almost certain to occur. It
does not, I think, require an expert to see that if the plan of
burying the dynamite in a heap of manure had been adopted

this accident would not have occurred. Possibly it might have been a slower and more expensive process, though it is difficult to see why. The duty is cast upon the master to use his superior intelligence and ability to devise ways and means, so far as he reasonably can, to protect his servants against hidden dangers that lurk in the employment.

There does not seem to be any other question in this case that calls for notice and so the order of the Appellate Division should be reversed, with costs in all courts, and the judgment of the trial court affirmed.

VANN, J. (dissenting). If the meaning of words used in a statute is doubtful, the result which will follow a particular interpretation may be considered in ascertaining the legislative intent. In the case before us the controversy arises over the meaning of the words "after the cause of action therefor shall have accrued" contained in chapter 572 of the Laws of 1886. The appellant contends that these words relate to the time when the administratrix of the estate of the decedent was appointed. The respondent contends that such words refer to the date of the death of the plaintiff's intestate resulting from the alleged negligence of the defendant. The purpose of the statute should be borne in mind. As was said in *Reining* v. *City of Buffalo* (102 N. Y. 308): "The plain intent of the requirement was to protect the city from the costs, trouble and annoyance of legal proceedings, unless, after a full and fair opportunity to investigate and pay the claim, if deemed best, they declined to do so." The only persons who can procure the appointment of an administrator in a case like the one at bar are the husband, wife and next of kin of the decedent. The recovery belongs to them, and they alone are interested therein. The municipality charged with negligence has no standing to make the application. If they wait indefinitely before they apply for letters in order to enforce the claim, according to the theory of the plaintiff, the purpose of the statute as defined in the case above cited may be defeated, because the city may not know that any claim is

made against it until the appointment of an administrator which may be deferred for ten, twenty or even fifty years, or until the time has passed to adequately investigate the facts and determine whether to pay the claim or not.

Assume that twenty years ago a person was killed owing to the negligence of the defendant, or of any other municipality of its class; that no claim was made against it by the husband, wife or next of kin for the damages resulting from the death, and that for this reason no investigation was made by the corporation as to its liability. Is it possible that at this late day an administrator of the estate of the decedent may be appointed, the notice served and an action maintained on account of such negligence? The illustration, while extreme, is justified, if the appellant's contention is sound.

Section 1904 of the Code of Civil Procedure provides that in a case like this, "when final judgment for the plaintiff is rendered, the clerk must add to the sum so awarded, interest thereupon from the decedent's death, and include it in the judgment." Did the legislature intend that the persons interested might wait any number of years after the death before obtaining letters of administration and then commence an action to recover the value of the life and that upon securing a verdict interest should be added to the amount at the rate of six per cent per annum from the time of such death?

For the purpose of illustration assume that John Doe was killed through the negligence of a municipality over twenty years ago. Nothing was said to its officers about the death and no notice was given of any claim that it was liable on account of the death. Twenty years later an administrator was appointed, the notice served, an action brought, the case tried and it was found that the value of the life was $5,000. If the construction contended for by the appellant is correct, the recovery would be more than doubled because of the interest which had accrued. In other words, the city would be compelled to pay interest at six per cent for a period of twenty years upon a claim of which it had never heard, interest at that rate for that length of time upon a cause of action which

had not "accrued" until after the entire interest period of twenty years had elapsed.

These observations bear upon the question as to what the legislature intended by the words "after the cause of action therefor shall have accrued." These words, in substance, appear in almost every section of the regular statute of limitations, for which the act in question is a substitute as to the action authorized thereby. They appear in the provisions fixing the period of limitation at twenty years, ten years, six years and so on. (Code Civ. Pro. §§ 380, 386, 388.) Care is taken in certain cases to extend the period within which an action may be commenced against an administrator, but no provision is made to extend the period within which an action may be commenced by an administrator, except the uniform period of one year after the death of the intestate. (Id. §§ 392, 401, 402, 403.) Can it be contended that a cause of action upon a promissory note, or on any other contract made by an intestate, does not "accrue" until an administrator has been appointed for the deceased holder of the note, or owner of the claim? Yet why not if the claim of the appellant is sound? Upon what ground can it be held that the same words, relating to the same subject, mean one thing in the Code and another in the act under consideration? Did the legislature mean that the persons interested in a recovery for negligence resulting in death could have the cause of action "accrue" at such time as they saw fit and as would best promote their interests, even at a time when all opportunity for investigation on the part of the city had passed and no defense would be possible?

It seems to me that the legislature, in passing an act to protect cities from stale or doubtful claims, could not have intended a result so unjust to the very class they sought to shield. There is no middle ground as to the question involved. If the appellant is right, she might have waited twenty years before applying for letters of administration, or until every fact relating to the accident which might have been shown by the city had been forgotten, or the witnesses had died, and

then upon obtaining a verdict have had it doubled by the
addition of interest. This case involves that proposition.
There is no way to escape the result suggested if those
interested desire to follow the course indicated.

It has generally been assumed by the bar and the public
that old claims against a city for damages owing to death
from its negligence many years ago cannot now be enforced.
If, however, the contention of the appellant is to prevail, I
can see no reason why an administrator may not now be
appointed, the notice given and an action maintained, regard-
less of the date of the death. That would be a bad result,
and it suggests a wrong construction of the statute. The
interpretation of the act given below, on the other hand, is
reasonable, just and works harm to no one. Immediately
upon the death of a person caused by the negligence of a
city, any one of those interested in the recovery of damages
therefor may apply for the appointment of an administrator
to bring an action. They need not wait a week. Usually
they do not. Ample time is given for the service of the notice
required to enable the city to investigate the claim, and, if it
is found to be just, to settle, but if it is found to be unjust, to
prepare to defend. This construction causes injustice to no
one, gives effect to the spirit of the statute, and, as it seems
to me, is in clear accord with the intention of the legislature
when it used the words " after the cause of action therefor
shall have accrued."

Again, section 1902 of the Code limits the time within
which an action such as that before us can be commenced " to
two years after the decedent's death." Under that statute it
could not with reason be claimed that the time within which
such an action must be commenced depends in the least upon
the date when letters of administration were issued. Did the
legislature in subsequently passing the act in question, with
the object indicated, mean to extend the limit when the action
is brought against a city, or did it intend to prescribe a fur-
ther limitation for the protection of cities? Did it mean that
such an action must be commenced within two years against

any defendant except a city and to extend the time, at the election of those interested, to ten, twenty or fifty years after the death, as to the very cities which it was trying to protect? I cannot concur in a construction that permits such a result.

It is, however, claimed that two periods of limitation apply to causes of action such as the one before us, the first, of one year, depending upon the date when the cause of action accrued, and the second, of two years, depending upon the date of the decedent's death. (L. 1886, ch. 572, § 1; Code Civ. Pro. § 1902.) As this is necessarily an action to recover damages for a personal injury resulting from negligence, why should not a third period of three years be added, as provided in section 383 of the Code of Civil Procedure? It does not seem reasonable that the legislature intended to provide two or more periods of limitation for the same cause of action, and I think that the mere statement of the claim carries with it a refutation of its soundness.

I vote for affirmance.

GRAY, J. (dissenting). I vote for affirmance. Upon the merits of the case, I think no negligence was shown in the defendant. If the accident was not due to the intestate's negligence, it was chargeable to the fault of a fellow-servant, in a detail of the work.

As to the construction of the statute, I agree with Judge VANN that the cause of action accrued upon the death of the intestate. I think this construction is required and is justified, when the provision of the Code contained in section 1902 is read in connection with section 380 and the sections following. The case comes within the class of personal injuries and is controlled by section 1902, which prescribes a limitation of two years after the death for the commencement of the action. The words of the statute of 1886, in question, should be given that meaning, which accords with their sense as used in sections 380 to 388 of the Code, with the special limitation of section 1902 and with the obvious intention of the legislature to protect the municipality from stale claims.

CULLEN, Ch. J., and O'BRIEN, J., read for reversal of order of Appellate Division and affirmance of judgment of Trial Term, with costs in Appellate Division and in this court; HAIGHT and WERNER, JJ., concur with CULLEN, Ch. J.; VANN, J., reads dissenting opinion, and BARTLETT, J., concurs; GRAY, J., concurs, in memorandum, with VANN, J.

Ordered accordingly.