HARRY H. KUTNER, Appellant, v. JAMES C. FARGO, as President of
    THE AMERICAN EXPRESS COMPANY, Respondent.

*Malicious prosecution — the plaintiff must prove want of probable cause in addition
to his innocence.*

In an action to recover damages for malicious prosecution the plaintiff must
    prove, in addition to his innocence, the want of probable cause on the part of
    the defendant, although there may be cases where, the plaintiff knowing noth-
    ing of the facts and circumstances under which the arrest was procured, the
    bald fact of his arrest, coupled with the circumstances attending it, may suf-
    fice, *prima facie*, to show a want of probable cause.
The facts in this case considered and held insufficient to constitute proof of want
    of probable cause.

APPEAL by the plaintiff, Harry H. Kutner, from an order of the
Supreme Court, made at the New York Trial Term and entered in
the office of the clerk of the county of New York on the 6th day
of April, 1897, as resettled by an order entered in said clerk's office
on the 29th day of April, 1897, setting aside a verdict in the plain-
tiff's favor and granting the defendant's motion for a new trial made
upon the minutes.

*Leo G. Rosenblatt*, for the appellant.

*Lewis Cass Ledyard*, for the respondent.

BARRETT, J. :

This is an action for malicious prosecution. The defendant is the
president of a voluntary unincorporated association organized under
the statute with regard to associations consisting of seven or more
persons. The plaintiff had a verdict for substantial damages which
the learned trial judge set aside. The motion to set aside the ver-
dict and for a new trial was made upon the trial judge's minutes.
The plaintiff, in appealing from the order, contends that the motion
for a new trial was definitely passed upon, adversely to the defend-
ant, at the trial, and consequently that the trial judge was without
jurisdiction to grant, as he did, a further hearing upon the motion
after the close of the term. The defendant, upon the other hand,
contends that the motion for a new trial was not finally passed upon
at the trial. There seems to have been a dispute below as to what

actually transpired upon the rendition of the verdict. The plaintiff insisted that the trial judge denied the defendant's motion for a new trial, reserving leave only to move to dismiss the complaint. The defendant insisted that leave generally to renew the motion for a new trial was reserved. The dispute was solved in the defendant's favor by the learned trial judge, and the record as made up on this appeal sustains him. The record contains the following direction made at the close of the trial: "The Court: I will let the motions to set aside the verdict and for a new trial and the motion to dismiss stand undetermined and change my ruling accordingly, and when you present your case I will consider them. I think I will deny them again. I will let the motions stand as made and withhold decision in respect to the matter."

It is true that this conflicts with the affidavit of a clerk in the office of the plaintiff's attorneys, who gives an excerpt from the stenographer's minutes, in which this direction does not appear. We must, however, abide by the record, especially as the learned trial judge, from his own recollection, states that the stenographer's minutes were incomplete in the particular mentioned. The following recital in the order appealed from is also quite conclusive: "And the court having decided that it had entertained the motion to set aside the verdict and for a new trial at the trial, and had withheld its decision thereon until further argument after the minutes had been procured."

This brings us to the merits of the appeal. The defendant's motion was granted because of "substantial error at the trial." It will not be necessary to consider the particular assignments of error contained in the memorandum filed by the learned trial judge. We think the motion was properly granted for reasons of a far more radical character than those discussed in his opinion. In our judgment the complaint should have been dismissed when the plaintiff rested; and upon the close of the case a verdict for the defendant should have been directed. The burden was upon the plaintiff to prove a want of probable cause. He entirely failed to do so. He contented himself with testifying to his arrest upon the charge of stealing a package addressed to one McAllister at White Plains, and asserting his innocence in the premises. He denied having seen or handled the package in question. He

testified, too, that prior to his arrest no one had asked him to explain anything connected with the suspected larceny; that upon the occasion when the defendant claimed that the larceny was consummated, he was permitted to leave the package room without interrogation, and that upon his arrest he declared his innocence, which thereafter he constantly asserted in the face of persistent efforts to induce him to confess guilt. The rule, however, is that the plaintiff in this class of actions must prove something more than his innocence. He is bound affirmatively to show a want of probable cause. There may doubtless be cases where the plaintiff knows nothing of the facts and circumstances upon which the arrest was procured. There may even be cases where he can ascertain nothing upon that head, and where the bald fact of his arrest, coupled with the circumstances attending it, may suffice, *prima facie*, to show a want of probable cause. But that is not this case. The facts and circumstances upon which the defendant here acted were well known and entirely accessible to the plaintiff. He was arrested upon the affidavits of an agent and clerk of the company. He was then taken before a police magistrate and committed, having waived an examination. Subsequently he was indicted, tried and acquitted. He put in evidence the indictment and accompanying papers. The latter contained the affidavits made by the defendant's agent and clerk before the police justice, also that magistrate's commitment in which he recited that it appeared to him by the depositions that the crime had been committed, and that there was sufficient cause to believe the defendant guilty. These proofs certainly showed no want of probable cause. They tended rather to show probable cause at least *prima facie*. Then, too, the plaintiff was cognizant of the evidence which was presented against him upon the trial of the indictment. It is indeed apparent that throughout he was aware of every fact and circumstance upon which the defendant had proceeded. In placing his case before the court and jury, these facts and circumstances were entirely ignored and were left to be put in by the defendant. Thus, the plaintiff sought to shift the burden which the law cast upon him. Had the defendant failed to take it up or to put in any evidence upon the subject, it would have been impossible to say whether the company had or had not probable cause for the accusation, and the jury, with light upon the subject at hand and

entirely at the plaintiff's command, would have been left wholly in the dark.

The defendant, however, upon the denial of his motion to dismiss, placed before the court and jury all the evidence upon which the company acted, and we feel bound to say that a clear case of probable cause was thereby made out. This evidence was undisputed — we mean with respect to its presentation to the defendant in good faith and without malice. The plaintiff, as we have seen, denied the handling of the package, and denied, also, the suspicious circumstances testified to by the defendant's witnesses. But the conflict at this point did not present a material question of fact for the jury. Whether the company here had probable cause or not depended upon the information which it had at the time the charge was made. (*Foshay* v. *Ferguson*, 2 Den. 617; *Miller* v. *Milligan*, 48 Barb. 30; *Delegal* v. *Highley*, 3 Bing. [N. C.] 950; *Seibert* v. *Price*, 5 Watts & Serg. 438.) There was no conflict as to the information which was actually furnished to the defendant. The informants reported to the general superintendent and manager of the company what they had observed. They were fellow-employees of the plaintiff, uninfluenced by unkind feeling, much less malice. They intended to, and, so far as they were aware, did, report what they saw accurately, and there was nothing whatever in any of their reports to suggest the slightest doubt of its truth or fairness. The higher officials of the company themselves acted upon these reports, not only in perfect good faith, but with extreme caution. The question, then, is: Were the facts thus brought to the defendant's attention — facts to which the informants were prepared to and did testify — facts of the truth of which the defendant had every reasonable assurance — sufficiently strong in themselves to warrant a cautious man in his belief that the person accused was guilty of the offense charged? (*Carl* v. *Ayers*, 53 N. Y. 17; *Fagnan* v. *Knox*, 66 id. 528; *Anderson* v. *How*, 116 id. 343.) The facts thus presented being undisputed, the question is one of law. These facts do not admit of two inferences. They were either sufficient to constitute probable cause, or insufficient. Without reflecting upon the plaintiff in the slightest degree, and without questioning the justice of the verdict of acquittal, we cannot doubt that the appearances were greatly against him, and that the circumstances were such as

to furnish any discreet and prudent man with reasonable grounds for the accusation. The material facts were substantially these: The plaintiff was a way-bill clerk in the package room of the express company at Forty-eighth street in this city. He was a man of excellent reputation, and the defendant had no cause to complain of or oppress him. A number of valuable packages had disappeared in the room where he was employed, and the defendant's local agent, Mr. Sherman, determined, if possible, to find the guilty person. He accordingly instructed two trusted employees of the defendant to watch what was going on and report to him. Upon the afternoon of July 12, 1892, a clerk named Kinsley reported to Mr. Sherman that he had seen the plaintiff handling a package addressed to R. McAllister, White Plains; that the plaintiff had gone to a bin on the side of the office where only way-billed packages belonged, and had taken certain packages from the bin and thrown them into a wheel basket used for taking packages to the train for forwarding; that while doing this he retained in his hand one package which he carried to his desk; that another employee, Enright, also saw this; that after the plaintiff had gone to his desk with this package he looked up and caught Kinsley's eye; that he then turned away and brushed the package off his desk to the floor, and shortly thereafter left the room; that Enright then went to the plaintiff's desk, picked up the package, brought it over to Kinsley, made a note of the address, and then took it back and replaced it upon the floor. That evening Enright reported the sequel to Sherman. He had seen the plaintiff upon his return to the package room move the package round in front of his desk, pick it up and drop it in one of the drawers. Later Enright reported that the plaintiff in leaving the place for the day carried away a package of his own, said to be a straw hat, which he had purchased in the interim between his leaving the room and his return, inside of which Enright had observed the impression of another package corresponding in shape and size with the McAllister package. It further appeared that the McAllister package never reached its destination. There was, in fact, no record of its having been way-billed; and it has never been seen since it was dropped, according to these witnesses, into the drawer of the plaintiff's desk. There was also a later report

from another employee of the company that on the evening of the same day the plaintiff obtained from him some tissue paper, and then went to his desk and, kneeling down in front of it, wrapped something up there. There were also suspicious circumstances with regard to other packages occurring both before and after the disappearance of the McAllister package which need not be detailed. The arrest was for the larceny of the McAllister package. Before the arrest the defendant placed the whole matter in the hands of the police, and finally the facts were laid before a police justice, who advised the warrant. Upon the plaintiff's arrest, he accounted for money and property found in his possession in part by the statement that he had lately won money betting upon horse races. It is clear that the facts in their entirety as presented to the defendant were amply sufficient to justify the company's managers in acting as they did. They did not, as the plaintiff claims, so act upon mere guess or conjecture, but upon actual and substantial facts of which they were credibly informed pointing to the plaintiff's guilt. The delay which ensued between the information of these facts and circumstances and the arrest is fully accounted for. It resulted, not, as claimed, from doubt, but caution, and also from the tardiness of the police agents.

The point is made that, if the defendant knew, or ought to have known, or could with reasonable diligence and caution have ascertained, facts exculpating the plaintiff, he cannot successfully urge that there was probable cause. Assuming the correctness of this proposition precisely as put, the answer is, that there were no such facts. The plaintiff has never suggested the existence of any exculpatory fact. He has relied upon his denials. The defendant was certainly not bound to inform him of the company's suspicions and give him an opportunity to escape. Had the company done so, the plaintiff upon his own showing could simply have given its informants the lie. There were other clerks, it is true, in the package room besides those who reported upon the plaintiff's acts. But the defendant could have had no reason to believe that these other clerks had observed any of the facts in question. The persons who had observed these facts were specially assigned to the duty of observation. But for that they too would probably have remained unobservant, and the disappearances of property might have proceeded

indefinitely. Nor was there need of special cross-examination of the reporting witnesses. Each one told the defendant's officials his story fairly and squarely, and told it without color or suspicious manner. There was no actual malice — no motive whatever for ruining the plaintiff's reputation. All parties performed a duty which they owed to the company, and the plaintiff was simply the victim of unfortunate circumstances which he has repudiated, but has never attempted to explain.

We think, therefore, that the order appealed from was right and should be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY, INGRAHAM and McLAUGHLIN, JJ., concurred.

Order affirmed, with costs.