(99 App. Div. 316)

### BANKELL v. WEINACHT.

(Supreme Court, Appellate Division, First Department.   December 16, 1904.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE.

A finding of want of probable cause in instituting a prosecution against plaintiff for larceny of money collected by him for defendant's company of B. is not warranted; the facts being that on investigation it was found that plaintiff had received the money of B., and given him a receipt therefor; an examination of the books and inquiry of the company's employés not disclosing that it had been paid over to the company, or showing any trace of it after its receipt by plaintiff; and plaintiff having previously in like manner misappropriated money belonging to the company.

2. SAME.

Want of probable cause in instituting a prosecution against an employé for larceny of money which he had collected for the employer cannot be inferred from the fact that inquiry was not made of a former employé, where any information which could thus have been obtained would simply increase the weight of testimony showing the existence of probable cause.

3. SAME—FALSE AFFIDAVIT.

The affidavit on which issued the warrant for arrest of a collector for larceny of money collected by him for his employer is not false, thus showing want of probable cause, because stating that the employé failed, neglected, and refused to pay over the money to his employer, though no demand was made on him, as it is to be construed as referring to his omission to pay it over on receiving it, which operated, in law, as a refusal to perform his duty.

4. SAME—DEMAND FOR RETURN OF MONEY.

Want of probable cause for a prosecution of an employé for larceny of money collected by him for his employer cannot be inferred from the fact that no demand was made for return of the money, and that the prosecution was not instituted till eight months after the money was collected; the investigation into his acts not having closed till shortly before his arrest.

5. SAME—MALICE.

The fact that, before plaintiff was prosecuted for larceny of money of his former employer, he had started in a rival business, does not bear on the question of probable cause, but on the question of malice in instituting the prosecution.

O'Brien, J., dissenting.

Appeal from Trial Term, New York County.

Action by George W. Bankell against Edward Weinacht. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Richard R. Rogers, for appellant.
Joseph M. Proskauer, for respondent.

HATCH, J.  The plaintiff, George W. Bankell, was arrested upon the 11th day of April, 1901, upon a warrant sworn out by the defendant, charging him with the larceny of $4.68.  Upon his examination before the magistrate he was held for trial, and gave bail in the sum of $500.  Upon the 7th day of June, 1901, he was tried

in the court of special sessions and acquitted, and thereupon he brought this action for malicious prosecution and false imprisonment. The plaintiff was an employé of the Morris European & American Express Company, with which company he remained from August, 1898, to January 10, 1901. His duties were those of a solicitor of export business, and collector of unpaid freight bills. In August, 1899, the defendant, Edward Weinacht, who was the general manager of the express company, discovered that Bankell was short in his accounts, and that he had collected several small amounts which he had failed to turn over to the company. When questioned about it, Bankell admitted that he had not turned over certain of such moneys. Thereupon an arrangement was made between the parties, under which the amount of the deficit was to be deducted from plaintiff's salary from time to time, in small amounts. This arrangement was carried out, and the money paid. Upon the trial the defendant testified that the amount of the shortage thus adjusted was $40 to $50, while the plaintiff testified that it was only about $20. The exact amount is not now material. The defendant also testified that, when he made the arrangement for the payment of the deficit, he believed that the plaintiff would serve the company faithfully and pay over all moneys collected by him, and for this reason he was retained in his employment, and subsequently his wages were raised. Plaintiff continued with the company until about the 10th day of January, 1901, when he engaged in business with the Merchants' European Express Company, which he was largely instrumental in organizing, and the latter company became a sharp rival of the defendant's company in the express business. After the plaintiff had left the employ of defendant's company, and in February, March, or April, the defendant discovered that bills which were apparent obligations of persons and corporations doing business with the company had been paid. Thereupon he made careful investigation of the matter, and discovered that various persons held receipted bills for the sums appearing to be due from them upon the books of the company, amounting to $40 or $50. This money, so far as the defendant was able to discover from the books and employés of the company whom he consulted, had not been paid over. Among the receipted bills was that of John Boyle, amounting to $4.68, which was unaccounted for, and the receipt for which was signed by the plaintiff. After making the investigation the defendant laid the whole matter before the attorney of the company for advice concerning the matter, and the liability of the plaintiff in relation thereto. The attorney made a thorough investigation of the whole subject; and after such investigation he advised that the plaintiff was guilty of larceny. After receiving this advice the defendant caused the plaintiff to be arrested upon such charge. The plaintiff admitted the misappropriation of the moneys, the amount of which was deducted from his salary. He disputed the amount, but he did not dispute the fact of the misappropriation. He also admitted that the receipt held by Boyle was in his handwriting, and that he had received the money. He claimed that after he received it, as there was no one present in the office to

whom he could give the money, he made a memorandum of the amount from whom it was received, and placed it upon the desk of the bookkeeper, and that he never again saw or heard anything concerning it until he was arrested upon the charge of larceny.

The law is well settled that the burden is devolved upon the plaintiff to prove that the prosecution was instituted through malice and without probable cause. The latter question becomes one of law for the determination of the court. Where the facts are not in dispute, it is error to submit such question to the jury; but where the evidence upon the subject of probable cause is controverted and conflicting, or it involves the credibility of witnesses, then it becomes a mixed question of law and fact, and is required to be submitted to the jury under proper instructions as to the law. Fagnan v. Knox, 66 N. Y. 525. In the last case it was said:

"The question of what constitutes probable cause does not depend upon whether the offense has been committed, in fact, nor whether the accused is guilty or innocent, but upon the prosecutor's belief, based upon reasonable grounds. [Bacon v. Towne] 4 Cush. 238. The prosecutor may act upon appearances, and, if the apparent facts are such that a discreet and prudent person would be led to believe that the accused had committed a crime, he will not be liable in this action, although it may turn out that·the accused was innocent. [Carl v. Ayers] 53 N. Y. 17. If there is an honest belief of guilt, and there exist reasonable grounds for such belief, the party will be justified."

This rule has received the uniform sanction of the courts. Anderson v. How, 116 N. Y. 336, 22 N. E. 695; Kutner v. Fargo, 34 .App. Div. 317, 54 N. Y. Supp. 332; Scott v. Dennett Surpassing Coffee Company, 51 App. Div. 321, 64 N. Y. Supp. 1016. Tested by these rules, it seems clear that the plaintiff failed to adduce proof from which the court was authorized to find a lack of probable cause in instituting this prosecution. Upon the conceded facts, it appeared that plaintiff, in the course of his-employment, had misappropriated moneys in a similar manner to that with which he was charged in the warrant. It was not claimed that the money which the plaintiff was charged with misappropriating ever reached the treasury of the company, and it did not appear credited upon its books. So far as investigation of this transaction disclosed facts, it showed that money belonging to the company had been received by the plaintiff, and that it had not been paid over by him to the company. Examination of the books, conversations with employés, an examination of Boyle's receipt, and the fact that no trace of the money could be found after it reached the hands of the plaintiff, coupled with the fact that he had previously in like manner misappropriated moneys belonging to the company, presented a condition where the only rational conclusion to be drawn was that the plaintiff had collected the money and kept it. Standing alone, this condition would necessarily produce in the mind a conviction that the plaintiff.had failed to account for the money he was charged with misappropriating. The defendant made careful investigation among the company's customers and its employés, and then laid the whole matter before counsel for advice, before taking any steps in the matter. It is difficult to see why this action and all the cir-

cumstances were not sufficient to furnish a prudent and cautious man with reasonable grounds to believe that the defendant had misappropriated the money. As was said in Kutner v. Fargo, supra, of conditions no stronger than the present:

"The facts thus presented being undisputed, the question is one of law. These facts do not admit of two inferences. They were either sufficient to constitute probable cause, or insufficient."

There was no conflicting evidence requiring submission to a jury in order to determine the conclusion of fact to be drawn, as in every essential aspect the facts stood undisputed. There need be no aspersion cast upon the plaintiff's character in saying that the condition authorized the inference that probable cause existed. Such question was required to be determined upon these facts, and not upon explanatory and exculpating circumstances subsequently developed, of which the defendant had no knowledge, and would have obtained none in the exercise of reasonable care and prudence.

It is said, however, that inquiry should have been made of Miss Sachs, a stenographer and assistant cashier employed by the company. She was sworn as a witness upon the trial, and testified that all cash collected was to be turned in to the defendant or to her, and, when turned in to her, she would initial the bills to show that she received the money. Assuming that the defendant, in the exercise of extreme caution, ought to have seen this witness, who had then left the employ of the company, he would have been chargeable with no more knowledge than she could have imparted, had he consulted her; and her knowledge consisted in the fact that the plaintiff had not turned over the money which he was charged with misappropriating to her, and her initial was not upon the receipted bill, nor were the bills turned in to her, nor did the defendant pretend that he delivered either bill or money to this witness. Information which she could have imparted prior to the arrest simply increased the weight of the testimony in showing the existence of probable cause.

It is further claimed that the defendant made a false affidavit upon which the warrant issued, and that this fact indicated a lack of probable cause. The falsity claimed consists in the statement that the plaintiff failed, neglected, and refused to pay over the money to the express company. It was conceded that the defendant made no demand upon the plaintiff to pay the money, and therefore it is said that the statement is false, that he refused to pay over the money. We are of opinion that the affidavit is not susceptible of this construction. It was the plaintiff's duty to turn over the money after being received, and, if he failed, it operated, in law, as a refusal upon his part to perform the duty which rested upon him; and the affidavit is to be construed as referring to the omission to pay over, rather than that a demand was made, followed by an affirmative refusal of compliance.

The plaintiff also claims that want of probable cause can be gathered, for the reason that no demand was made upon the defendant for a return of the money, and that he was not arrested until eight months after the alleged larceny. It was not essential

that a demand should be made, in order to justify a reasonable ground of belief of the plaintiff's guilt, if the facts existing justified it, as they clearly did. While the delay between the misappropriation and the issue of the warrant was eight months, yet the defendant's investigation into the plaintiff's acts did not close until some time in February, March, or April, and plaintiff was arrested on the 11th day of April. No inference justifying a lack of probable cause can therefore arise from this fact.

Claim is also made that want of probable cause can be inferred from the fact that the defendant started in a rival business; that, seven days before the arrest, defendant began a civil suit against the plaintiff, charging him with unfair competition. These facts did not bear upon the question of probable cause, but bore upon the question of malice in instituting the prosecution. It is well settled that lack of probable cause may not be inferred from proof of malice. Besson v. Southard, 10 N. Y. 236.

Upon the whole case, we are of opinion that the plaintiff failed in bearing the burden of showing that there existed a lack of probable cause. On the contrary, we think that, upon the practically undisputed facts, the existence of probable cause in instituting the prosecution was established to exist.

It therefore follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except O'BRIEN, J., who dissents.

---

(99 App. Div. 592)

### WERNER v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. December 15, 1904.)

1. TRIAL—MISCONDUCT OF JUROR—SETTING ASIDE VERDICT—APPLICATION.
    A motion to set aside a verdict on the ground of misconduct on the part of jurors should be made by application to the special term.

2. SAME—MISCONDUCT OF JUROR—OBJECTION—TIME.
    Where counsel permitted the trial to continue without calling the attention of the court to misconduct of a juror in talking with an interested party, he could not impeach the verdict on that ground.

3. SAME—CONVERSATION WITH EMPLOYÉ OF DEFENDANT.
    The mere fact that a juror conversed at the noon recess with an adjuster for defendant railroad company was no ground for setting aside a verdict in favor of defendant and granting a new trial in the absence of any showing as to the subject of the conversation.

Appeal from Trial Term, Kings County.