(97 App. Div. 416.)

## RAWSON v. LEGGETT et al.

(Supreme Court, Appellate Division, Second Department.   October 14, 1904.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—QUESTION FOR JURY.

In an action for malicious prosecution, the question of want of probable cause *held*, under the evidence, to be for the jury.

2. APPEAL—REFUSAL TO DIRECT VERDICT—GROUND NOT STATED IN MOTION.

A ground not stated in motions for nonsuit and for a direction of a verdict at the close of the evidence, to be one of the grounds on which the motions were made, may not be urged on appeal, for the purpose of reversal, as a reason why the motions should have been granted.

3. MALICIOUS PROSECUTION—EXCESSIVE VERDICT.

A verdict of $25,000 for malicious prosecution for embezzlement of a man 55 years old, who was receiving a salary of $4,500 a year as defendants' creditman, and the reasonable charges of whose counsel for procuring dismissal of the indictments was $5,000, will not be disturbed on appeal as excessive.

Woodward, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Byron Rawson against Francis H. Leggett and others. From a judgment for plaintiff and from an order denying a motion for new trial, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Edward S. Hosmer (William N. Cohen, on the brief), for appellants.

Morris J. Hirsch (Isaac N. Mills and Benjamin N. Cardoza, on the brief), for respondent.

HOOKER, J.   Plaintiff had a verdict for damages he claims to have sustained on account of the malicious prosecution of the defendants.   For many years they had conducted a large wholesale business with over 18,000 customers.   The plaintiff, prior to his arrest, was for many years employed by the firm as head creditman, with complete charge of the credit department, and was such during all the time that Borchardt, one of the firm's salesmen, was connected with them.   In November, 1901, it was discovered that Borchardt had embezzled over $24,000 of the firm's money.   Up to that time the latter had been in defendants' employ for several years, and the embezzlement had been going on for a period of at least three years, and the manner in which it was accomplished was somewhat as follows: Borchardt, unlike any of the other salesmen, guarantied the accounts of his customers, and he was permitted by the defendants to collect money from them from time to time, and turn over to the defendants the cash he had collected, or his individual checks upon his own banking account, for corresponding amounts.   From these collections, from time to time, he retained part of the moneys, continued to sell other goods, and collected the money therefor.   To conceal the exact status of the accounts of his customers, he handed to the cashier some of his later collections to apply on the accounts of such customers.   He concealed from his

employers all of his peculations, in spite of the fact that the firm sent out monthly statements for comparison, which contained averments that they were not requests for money, but merely memoranda for comparison, and requests that the customers report any discrepancies in the accounts to the firm direct, and not to the agents through whom they dealt. The conclusion is irresistible that during the whole period of Borchardt's embezzlement practically all of these monthly statements to the customers whose accounts he had tampered with must have been suppressed, so that they were not in fact received by them, although the plaintiff testified that several of Borchardt's customers had reported discrepancies to one of the defendants during that period of time. Borchardt's resources to prevent detection became, however, exhausted, and the defendants discovered the theft. All of his customers were called upon personally by others in the employ of the defendants, and it was ascertained that Borchardt had obtained and failed to account for something like $24,000 of the defendants' money. About the time the embezzlement was discovered, one of the defendants told the plaintiff that the latter was the proper person connected with the firm to interview Borchardt with relation to it. The plaintiff sought to be relieved of that duty, and stated that he would rather not have anything to do with it, and there is some evidence that the plaintiff actually advised against investigation, and suggested, in any event, that the defendants proceed slowly.

The monthly statements to which reference has been made were always drawn off by the bookkeeper, and by him placed upon the desk of the plaintiff. After examination by him, he handed them to the addressing clerk, to be thereafter passed to the mailing clerks. The plaintiff admits that he received all the monthly statements of Borchardt's customers from the bookkeeper, but says that he passed them all on to the addressing clerk. It appears that the addressing clerk was changed frequently, and that the four or five boys at the mailing department were also constantly being changed. The inference is sought to be drawn by the defendants that the suppression of these monthly statements must have been accomplished after they left the hands of the bookkeeper, and that, inasmuch as the plaintiff was the "only constant link in the chain," it was highly probable that no one else except himself effected the suppression.

Borchardt was arrested, but procured bail. Within a few weeks after this the plaintiff resigned his position, addressing one of the defendants by letter in these words: "Dear Sir: Having decided to make a change, my resignation is herewith. Kindly inform me what date it will suit your convenience for it to go into effect." The resignation was accepted to take effect the last day of January, 1902, five weeks after it was tendered. After the plaintiff left defendants' employ, he gave to one of the defendants' witnesses as his office address that of Borchardt's new place of business, and made the witness a proposition to sell bakers' supplies, which had been and was then Borchardt's specialty. After Borchardt's arrest, he was a frequent visitor at his home, and his association with him

seemed to be more intimate than it had been before the discovery of the embezzlement. Soon after plaintiff ceased to be connected with defendants' firm, Mr. Leggett, one of the defendants, testified that he interviewed Borchardt, and that the latter confessed to him that the plaintiff had been his accomplice, and had received six or eight thousand dollars out of the money that he had stolen. Although Borchardt was in the courtroom at the time of the trial, he was not called as a witness. Thereupon the defendants took counsel with their attorney, and the latter testified that Borchardt made to him a similar confession implicating the plaintiff. It appeared that during the 18 months prior to the discovery of the embezzlement the plaintiff had actually received from Borchardt the sum of about $2,400 in cash and checks, which had been deposited in his private bank account. After a continuance of the investigation by the defendants' counsel, he advised them to lay the matter before the district attorney, and this was done, with the result that an indictment was found against Rawson, and he was arrested on the 18th day of April, 1902. When about to be arraigned under this indictment on the 25th day of April, the indictment was, as the district attorney chose to designate his procedure, superseded by five others. An inspection of the minutes of the grand jury which found these five indictments was permitted, and upon these minutes a motion was made by the plaintiff to quash them. This motion was granted, with leave to the district attorney to present the case to a subsequent grand jury, but, nothing having been done, this action for malicious prosecution was commenced.

The defendants urge that the plaintiff has not met the rule which requires him, to sustain the burden of proof, to show want of probable cause for the prosecution and malice on the part of the defendants. The doctrine is well stated in Hazzard v. Flury, 120 N. Y. 223, 227, 24 N. E. 194, 195, as follows:

"The rule is that whether a person have probable cause to make a criminal accusation against another is *not* necessarily dependent *'upon the guilt or innocence* of the accused, or upon the fact whether a crime has been committed. If the apparent facts are such that a discreet and prudent person would be led to the belief that a crime has been committed by the person charged, he will be justified, though it turns out that he was deceived, and that the party accused was innocent.'"

And the defendants urge that the facts in the case are such that, as matter of law, it must be said that a discreet and prudent person would have been led to the belief that the crime was committed by this plaintiff. It is also said in Anderson v. How, 116 N. Y. 336, 338, 22 N. E. 695, 696:

"'What constitutes probable cause does not depend upon whether the offense has been committed in fact, nor whether the accused is guilty or innocent, but the prosecutor's belief based upon reasonable grounds.'"

Probable cause, unlike malice, is not determined by the standard of the particular defendant, but of the ordinarily prudent and cautious man, exercising conscience, impartiality, and reason, without prejudice upon the facts (Heyne v. Blair, 62 N. Y. 19); and an honest belief, unfounded upon reasonable grounds, is not sufficient (Farnam v. Feeley,

56 N. Y. 451, 454; Fagnan v. Knox, 66 N. Y. 525, 527). It is settled in this state that if, in an action of this kind, the facts are undisputed, and admit of but one inference, probable cause is a question of law; but if the facts are in dispute, or admit of opposing inferences, the question is for the jury. Fagnan v. Knox, supra; Wass v. Stephens, 128 N. Y. 123, 28 N. E. 21. Under this last doctrine I am impelled to believe that the question of probable cause was for the jury's determination, and not a question of law for the court, and that no error was committed by the learned court in denying the defendants' motions for a nonsuit, and for the direction of a verdict upon the ground that on the undisputed facts the defendants had not been shown to have acted in the prosecution without probable cause. The salient circumstances revealed by the evidence permitted of contrary inferences. The jury might well enough have found that the plaintiff's opportunity to suppress the monthly comparison statements, his more intimate association with Borchardt after the latter's arrest, coupled with the statement made by Borchardt that the plaintiff had been the accomplice, and the physical evidence of money having been paid the plaintiff by Borchardt recently before the disclosure of the thefts, were circumstances which, in the view of a discreet and prudent person, would lead to the belief that Rawson was guilty with Borchardt; but none of the salient facts disclosed leads to a conclusion of the plaintiff's guilt exclusively. For plaintiff was not the only person through whose hands the monthly comparison statements passed. Although it might have been more difficult for Borchardt to have perfected his arrangements for the suppression with the constantly changing addressing and mailing clerks, yet such a condition was not at all unlikely, nor sufficient, alone and unsupported by other circumstances, to convict. So, too, the payment of moneys by Borchardt to the plaintiff is not a circumstance which has but one inference. It is but necessary to refer to the evidence of the plaintiff himself in this regard to suggest innocent circumstances which might be inferred, namely, that these were borrowed moneys, part of which were secured by collateral, and which have all been repaid. What has been said is equally true of the circumstance of the plaintiff's later more intimate association with Borchardt. The confession which Borchardt actually made to the defendants, and later to their attorney, implicating the plaintiff, might resolve itself into a more difficult question; but it has been recently held by an undivided court in this department that the question of how far information received from another is a justification for the act of defendant in causing the arrest of the plaintiff, is not one of law for the court, but one of fact for the jury. Owens v. New Rochelle Coal & Lumber Co., 38 App. Div. 53, 55 N. Y. Supp. 913. In that case the credibility of the person who supplied the information upon which the defendant was induced to prosecute had not been attacked. This record presents, it seems to me, a more cogent reason why the question of probable cause, as far as Borchardt's confession is concerned, at least, is a question for the jury; for Borchardt was a self-confessed thief of many thousands of dollars, and might easily have had some ulterior motive for implicating another in his crime. The learned court did not err in presenting the question of probable cause to the jury, and the facts and circum-

stances are not such as require us to interfere with the verdict in that particular.

In their brief defendants urge that, inasmuch as the district attorney advised them to lay the matter before the grand jury, and inasmuch as they testified that they relied upon his advice, and that he made an independent examination of the witnesses in his office, they were entitled to a direction of a verdict at the close of the evidence. Their learned counsel evidently did not take that view, however, at the time of the trial, for neither in the motion for a nonsuit nor in the motion for the direction of a verdict at the close of all the evidence was that stated to be one of the grounds upon which the motions were made. By implication they conceded that such reasons were not sufficient to take the case from the jury, and they should not be permitted now, for the purpose of reversing this judgment, to urge this point, where, had it been made in time, it is not impossible that opportunity would have been given to supply additional and important proofs upon that subject. The Court of Appeals has held many times that motions for a nonsuit or to dismiss the complaint, to be effectual, must specify the defects supposed to exist. Binsse v. Wood, 37 N. Y. 526, 532; Thayer v. Marsh, 75 N. Y. 340; Sterrett v. Third National Bank of Buffalo, 122 N. Y. 659, 25 N. E. 913; Quinlan v. Welch, 141 N. Y. 158, 36 N. E. 12.

The verdict of $25,000 we cannot say was induced by mistake, passion, or prejudice on the part of the jury. The reasonable charges of plaintiff's counsel for his services rendered in procuring the dismissal of the indictments and in collateral matters was $5,000. The plaintiff had been in the employ of the defendants for between 20 and 25 years, and for several years prior to arrest had received a salary of $4,500. He was a man 55 years of age, and had evidently attained an honorable position in the community. The law concedes a wide latitude of discretion in actions of this class, and, except the limitation that the verdict should not seem to be actuated by prejudice, passion, or malice, places no general limit upon the amount of the recovery. Voltz v. Blackmar, 64 N. Y. 440. Cases in which other large verdicts have been sustained, where there has appeared no greater actual damage than in this, are Crane v. Bennett, 77 App. Div. 102, 79 N. Y. Supp. 66; Young v. Fox, 26 App. Div. 261, 49 N. Y. Supp. 634; Jacquelin v. Morning Journal Ass'n, 39 App. Div. 515, 57 N. Y. Supp. 299; Palmer v. N. Y. News Publishing Co., 31 App. Div. 210, 52 N. Y. Supp. 539; Scott v. Sun Printing & Publishing Ass'n, 74 Hun, 284, 26 N. Y. Supp. 690; Willard v. Holmes, 2 Misc. Rep. 303, 21 N. Y. Supp. 998, reversed on another point, 142 N. Y. 492, 37 N. E. 480.

The judgment and order should be affirmed, with costs.

HIRSCHBERG, P. J., concurs. BARTLETT and JENKS, JJ., concur in result.

WOODWARD, J. (dissenting). I do not agree with the majority of this court in the affirmance of the judgment in this action because I am convinced that there was no question involved which should have been submitted to a jury. The burden of showing a want of probable cause was upon the plaintiff. He was bound to

show, as one of the elements of his cause of action, not that no crime had been committed, or that he was not guilty of a crime, but that the defendants did not have reasonable cause to believe that he had been guilty of a crime. In an action of this character there are four things which must be shown affirmatively—the institution of the proceeding, the want of probable cause, malice, and the termination of the prosecution in favor of the plaintiff; and the burden of proof is upon the plaintiff to show each of these facts. Shafer v. Loucks, 58 Barb. 426; Hamilton v. Davey, 28 App. Div. 457, 51 N. Y. Supp. 88. It is, therefore, necessary that the plaintiff should prove that the defendants had no reasonable and probable cause to make the complaint against him, and that they did it maliciously, and with intent to injure the plaintiff. Osborn v. Stephens, 74 Hun, 91, 26 N. Y. Supp. 160. Probable cause has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense." See Shafer v. Loucks, 58 Barb. 431, and authorities there cited; Kutner v. Fargo, 34 App. Div. 317, 320, 54 N. Y. Supp. 332, and authorities there cited. Where the facts which were within the knowledge of the defendants at the time of instituting the proceeding are undisputed, the question presented is one of law, and to be determined by the court. Kutner v. Fargo, 34 App. Div. 317, 320, 54 N. Y. Supp. 332; Hamilton v. Davey, 28 App. Div. 457, 459, 51 N. Y. Supp. 88, and authorities there cited; Willard v. Holmes, Booth and Haydens, 142 N. Y. 492, 497, 37 N. E. 480. There is no dispute that the defendants were engaged in a large wholesale business, with over 18,000 customers, and that they employed one Borchardt as a salesman, with authority to collect bills from his customers. It is equally undisputed that Borchardt became a defaulter to the extent of nearly $25,000. There is no dispute that the plaintiff was employed by the defendants as a creditman, and that he was thus employed during all of the period covered by these defalcations on the part of Borchardt. It is conceded that the custom of the defendants was to send out monthly statements of account to all their customers, with a notice that this was not a request for the money, but merely for the purpose of having any errors in the account called to the attention of the defendants; the obvious and admitted purpose being to have a check upon the salesman. The plaintiff admits that the bookkeeper of the defendants made out these statements, and placed them all upon his desk; that he examined them, and turned them over to a clerk, whose duty it was to address these statements, and that they were then passed on to the mailing clerk. No one questions that there were a considerable number of changes made in the addressing and mailing clerks during the period of defalcations, so that the plaintiff was the only man between the bookkeeper, who concededly acted and delivered the statements to the plaintiff, and the various customers, who was in a position to suppress the statements to the customers of Borchardt; and it is not disputed that the latter was enabled to carry on his defalcations for a period of three years by reason of the fact that these

monthly statements, made out and delivered to the plaintiff by the bookkeeper, failed to reach their destination. Borchardt's defalcation being known, and the facts and circumstances being such that there was a great chance of the plaintiff being the accessory, there was here a ground of reasonable suspicion, warranting at least a careful investigation on the part of the defendants. Giving to the plaintiff the benefit of the presumption of honesty which belongs to an old and trusted employé, it was more probable that he was the one who could pick out the particular statements which were intended for the customers of Borchardt, and suppress them, than that this could be done by the changing employés in a subordinate position, who could have no general knowledge of the business, and who could not handle the statements without running much larger risks than the plaintff. In addition to these conceded or undisputed facts, the defendants knew that when the defalcation of Borchardt was under investigation the plaintiff declined to be the one who should call the attention of the former to the matter, and advised against the investigation, and that the work should be proceeded with with great care. They also knew that the plaintiff, who had been in their employ for 25 years, and who had worked himself up to a position commanding $4,500 per year, offered his resignation, without giving any reason therefor, and that he subsequently gave his address in a business transaction at the business place of Borchardt, whom he knew to be guilty of a large defalcation. They knew, likewise, that Borchardt had paid over considerable sums of money to the plaintiff during the few months which preceded the discovery of the defalcation of Borchardt, and that the plaintiff had, as a condition of making an affidavit in a matter in which Borchardt was involved, demanded and received a certain slip of paper, in which the plaintiff had written to Borchardt in substance that: "I am sorry I can do nothing for you for a couple of days. Your note came to me too late. If I had known it sooner, I would have held back your slips for a day or two." In addition to all of these matters, and the fact that the plaintiff was known to associate closely with Borchardt after his defalcations, and after he had left the employ of the defendants, the defendants and their counsel had received from Borchardt a confession, in which the latter declared that the plaintiff was his accomplice in the matter, and that the plaintiff had received $6,000 or $8,000 of the proceeds of the defalcation. In the light of these facts, none of which is disputed, the defendants, on the advice of their counsel, the latter of whom had conducted a personal investigation at their request, called the attention of the district attorney of the county to the case, and the latter directed his assistant to make a thorough investigation, and, if the facts warranted it, to lay the matter before the grand jury. The assistant made the investigation, calling some 20 or 30 witnesses into the office, and reported to his superior that the evidence undoubtedly justified action, and the case was then laid before the grand jury, which found an indictment, upon which the plaintiff was arrested, being subsequently released, owing to defects in the indictments which were found.

What is there here for the jury to pass upon? Borchardt had committed a crime, which he could not have carried out for any length of time without an accomplice or accomplices. The plaintiff was the one man who could have been this accomplice during all of the three years covered by the commission of the crime, and he voluntarily relinquished his position, paying a salary which had long been acceptable to him, and became the close associate of the defaulter after the crime was publicly known; and the defaulter, on being confronted, admitted that the plaintiff was his accomplice. Was it the duty of the defendants, knowing all of the facts which we have detailed, and others of less importance, but all tending in the same direction, to go to the plaintiff, and tell him of the suspicions entertained, and give him an opportunity to explain? Was that what reasonably prudent men do when they have been robbed by their employés? Clearly, the defendants were not bound to inform him of their suspicions and give him an opportunity to escape. Kutner v. Fargo, 34 App. Div. 322, 54 N. Y. Supp. 332. In the language of the case last above cited (pages 320, 321, 34 App. Div., page 336, 54 N. Y. Supp.):

"Without reflecting upon the plaintiff in the slightest degree, and without questioning the justice of the verdict of acquittal, we cannot doubt that the appearances were greatly against him, and that the circumstances were such as to furnish any discreet and prudent man with reasonable grounds for the accusation."

The defendants were not hasty. They did not cause his preliminary arrest and detention, but only when, after investigation by themselves and by their attorney, they became convinced that they had discovered the accomplice of Borchardt, they called the matter to the attention of the district attorney, and the latter, after investigation, brought the case before the grand jury, and that body, in the discharge of its duty, found that there was probable cause to believe that a crime had been committed, and that the plaintiff was guilty of that crime; for this is the necessary foundation for an indictment. "The right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial," say the court in Jones v. Robbins, 8 Gray, 329, 344, "before a probable cause is established by the presentment and indictment of a grand jury, in case of high offenses, is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty;" and, while the action of the grand jury in finding that there was probable cause may not be conclusive in all cases, it would seem that its determination upon the facts which were presented in this case, taken in connection with the conceded facts, afforded a sufficient foundation to justify the court in disposing of the question of probable cause as one of law. Of course, if it was shown that the defendants presented a garbled or unfair statement of the facts known to them to the grand jury, it would afford no protection to the defendants that the grand jury had found an indictment; but where, as in the present case, the facts known to the defendants were suffi-

cient to warrant them in believing that the plaintiff was the accomplice of Borchardt in his embezzlement, and these facts, after an independent investigation by the district attorney or his assistants, were placed before the grand jury, and that body found that there was probable cause to believe that a crime had been committed, and that the plaintiff was a party to that crime, it illy comports with public policy that the defendants should be called upon to pay large damages simply because of a failure on the part of the prosecuting attorney to make a case against the plaintiff. The action of the grand jury upon the conceded facts was a judicial determination that there was probable cause, and, the plaintiff having failed to show that there was any misrepresentation of the facts on the part of the defendants, upon which the grand jury acted, there was a failure to prove that want of probable cause which the law demands, and it was error to submit the question to the jury. We must assume that the grand jury did its duty; that it received and acted only upon competent evidence; and its conclusion, in the absence of evidence going to show that the defendants sought to mislead or deceive that body for the purpose of securing an indictment, should afford protection to the defendants.

In Monaghan v. Cox, 155 Mass. 487, 30 N. E. 467, 31 Am. St. Rep. 555, in an action for malicious prosecution, it was held that evidence that the defendant, in commencing the prosecution, acted upon the advice of the magistrate who received the complaint, was admissible upon the question of probable cause, overruling former cases; and the court say:

"The logic of the defense is that the proceedings alleged to have been malicious were in fact instituted in good faith and upon probable cause; and that it is upon the whole better that he who thus sets them in motion with the purpose of vindicating the law should be protected in the act, although an alleged offender may sometimes suffer unjustly, than that wrong and crime should go unpunished because of the danger incurred in making complaints. To establish the defense it is required of the party himself, if he claims protection because he acted upon the advice of others, ·that he shall act in good faith believing that he has good cause for his action, and not seeking to procure an opinion in order to shelter himself; that he shall make a full and honest disclosure of all the material facts within his knowledge or belief; that he shall be himself doubtful of his legal rights, and shall have reason to presume that the person to whom he applies, or whose advice he follows, is competent to give safe and prudent counsel; and that he shall honestly pursue the directions of his adviser. The adviser must be learned in the law, and of such training and experience that he may safely be presumed to be competent to give wise and prudent counsel in important matters, and must act under a sense of responsibility. By our own decisions above referred to, if, upon the evidence, it is clear that the complainant so acted, and that his adviser was a counselor at law, the defense is established, and the court will direct a verdict for the defendant."

See, also, Black v. Buckingham, 174 Mass. 102, 107, 54 N. E. 494, and authorities there cited.

The defendants come squarely within the rule here laid down. They made an investigation, and were in doubt. They called in their attorney, who conducted an investigation in their behalf, and who then advised them to present the matter to the district attorney. They followed this advice; and the district attorney, through

his assistants, made an investigation, and finally presented the matter to the grand jury; and that body found an indictment upon the evidence produced by the defendants and their witnesses, none of which is shown to have been false or misleading, or lacking in any of the elements of good faith. If the defendants, under this state of facts, are not protected by the law, what safety can there be for any one to set in motion the machinery of the law where a crime has been committed? The verdict of the jury in the case at bar can rest upon no other foundation than the fact that there was a failure in the prosecution, for certainly no reasonable man can hold that the facts which were known to the defendants, and which they disclosed to counsel and to the district attorney, were not such as to warrant an ordinarily prudent man in believing that the plaintiff was the accomplice of Borchardt.

I think the judgment should be reversed, and a new trial granted.