## SCHMIDT v. MEDICAL SOCIETY OF NEW YORK COUNTY.

(Supreme Court, Appellate Division, First Department.    February 3, 1911.)

1. MALICIOUS PROSECUTION (§ 16*)—DEFINITION.

A malicious prosecution is one begun in malice without probable cause to believe that it can succeed, and which finally fails.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 19–22; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 5, pp. 4309, 4310.]

2. MALICIOUS PROSECUTION (§ 15*)—ACTION—DEFENSES—PROBABLE CAUSE.

Probable cause for instituting a prosecution is alone a complete defense to an action for malicious prosecution in respect thereof.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 18; Dec. Dig. § 15.*]

3. MALICIOUS PROSECUTION (§ 20*)—PROBABLE CAUSE.

To justify a prosecution, it is not necessary that accused should appear to be guilty beyond all reasonable doubt, but one may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable, the test as to whether the belief is reasonable to be applied at the time when the prosecution was commenced.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 26–28; Dec. Dig. § 20.*]

4. MALICIOUS PROSECUTION (§ 71*)—PROBABLE CAUSE—QUESTION OF LAW OR FACT.

As to whether probable cause for instituting a prosecution exists is a question of law unless there be a dispute as to the facts, when it becomes a mixed question of law and fact to be submitted to the jury with proper instructions as to the law.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 160–167; Dec. Dig. § 71.*]

5. MALICIOUS PROSECUTION (§ 18*)—PROBABLE CAUSE.

Where a person not authorized under the state laws to practice medicine wrote to one confined in a hospital suffering with glanders, offering to cure him, and subsequently visited him in the hospital, examined him, and declared that he had glanders, allowed himself to be called a doctor, stated that he could cure the case, and left medicine with directions as to its use, there was probable cause for his prosecution for practicing medicine without legal authority.

[Ed. Note.—For other cases, see Malicious Prosecution, Dec. Dig. § 18.*]

Appeal from Trial Term, New York County.

Action by Paul Schmidt against the Medical Society of the County of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Almuth C. Vandiver, for appellant.

Denis A. Spellissy, for respondent.

McLAUGHLIN, J.    Action to recover damages for malicious prosecution. The defendant is a domestic corporation. The object of its incorporation, among other things, is to assist in the preservation of

the public health and secure the enforcement of laws regulating the practice of medicine in the county of New York. On or about May 4, 1907, the plaintiff, at the instigation of the defendant, was arrested on a charge of practicing medicine without being legally authorized to do so, in violation of chapter 661, § 153, Laws 1893, as amended by chapter 455, Laws 1905. He was taken before a magistrate, where, after several adjournments, he was held for trial in the Court of Special Sessions of the county of New York. He was tried in that court on March 5, 1908, and acquitted. After his acquittal, he brought this action to recover damages for his prosecution, alleging that the same was malicious and without probable cause. The answer put in issue the material allegations of the complaint. Plaintiff had a verdict for a substantial amount, and, from the judgment entered thereon and an order denying a motion for a new trial, defendant appeals.

At the trial of this action the evidence established, in substance, that the plaintiff was not authorized to practice medicine in the state of New York; that he held himself out as Dr. Schmidt, and claimed to have produced a remedy which would cure glanders; that on the 26th of April, 1907, an article appeared in one of the newspapers published in the city of New York, to the effect that a Dr. Gannett was in Bellevue Hospital suffering from glanders; that this article was shown to the plaintiff by one Conrad, who at the same time told the plaintiff he had written Dr. Gannett, the letter being signed "The Department of Glanderine, per C. Conradus, Sec.," offering to cure him free of charge, provided proper credit was given for the cure, and that the plaintiff approved of such letter; that the letter was received by Dr. Gannett, and he turned the same over to the defendant, which, after an investigation, discovered that Conrad had theretofore been convicted of illegally practicing medicine, and with Dr. Gannett's consent an answer was sent purporting to be signed by him requesting Conrad to call if he could cure glanders; that some time during the day on which the answer was sent Conrad called at the hospital, accompanied by the plaintiff, whom he introduced as "Herr Dr. Schmidt"; that Conrad, in the presence of the plaintiff, stated that he could cure glanders; that Schmidt was a specialist on the subject and had discovered a cure for glanders; that Conrad and Schmidt then examined Dr. Gannett, but as to just how thorough the examination was the testimony was somewhat conflicting; that after such examination Conrad and Schmidt conversed with each other in German, and then Conrad, claiming Schmidt could not speak English, purported to interpret what Schmidt said, which was to the effect that Dr. Gannett had glanders, but he could cure him; that they then left, and the next day a letter was received by the physician in charge of Dr. Gannett, and also one by Dr. Gannett himself, signed in the same way as the prior letter, stating that Dr. Schmidt was sure Dr. Gannett's disease was glanders, and that a written guaranty would be given to cure him, provided written authority to undertake the case was first received; that two days later another letter was received by Dr. Gannett, signed by Schmidt as president of the department of glanderine; that no authorization of any kind was given to the plaintiff to treat Dr. Gannett, but on May 2d Conrad and plain-

tiff again appeared at the hospital and again examined and questioned Dr. Gannett, and left pills for him to take and a bottle of medicine to be used as a wash, with directions as to their use; that further directions as to the use of the medicine thus left were contained in a letter received the next day, signed "Paul Schmidt, President"; that on May 4th plaintiff and Conrad again called at the hospital to see Dr. Gannett, and both were then arrested on a charge of illegally practising medicine; and that after the plaintiff's arrest he was searched, and on his person was found a paper which purported to give the symptoms of glanders observed in Dr. Gannett's case, which was subscribed "P. Dr. Paul Schmidt," also a card which bore the name of "Dr. Paul Schmidt, inventor of the glanderine for horses," etc.

Before the plaintiff could succeed in the action, he had to establish by a fair preponderance of evidence that his prosecution was malicious. Malicious prosecution has been defined as "one that is begun in malice without probable cause to believe it can succeed, and which finally ends in failure." Burt v. Smith, 181 N. Y. 11, 73 N. E. 495. In order to succeed, therefore, the plaintiff had to prove that his prosecution was malicious, without probable cause, and that he was acquitted. At the conclusion of plaintiff's case, the defendant moved for a dismissal of the complaint on the ground that the plaintiff had failed to prove want of probable cause. The motion was denied and an exception taken, and at the conclusion of the whole case defendant moved for the direction of a verdict on the same ground. This motion was also denied and an exception taken.

I am of the opinion that the trial court erred in each case and each exception necessitates a new trial. The trial court, as appears from its rulings and the charge to the jury, apparently was of the opinion that actual guilt and probable cause must concur in order to constitute a defense. This is not the law; probable cause alone being a complete defense. Fagnan v. Knox, 66 N. Y. 525; Kutner v. Fargo, 34 App. Div. 317, 54 N. Y. Supp. 332; Bankell v. Weinacht, 99 App. Div. 316, 91 N. Y. Supp. 107; Clark v. Palmer, 116 App. Div. 117, 101 N. Y. Supp. 759, affirmed 191 N. Y. 540, 84 N. E. 1110. It is not necessary that the accused, in order to justify a prosecution, should appear to be guilty beyond all reasonable doubt, but, as said in Burt v. Smith, supra:

"One may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable."

The test as to whether reasonable or not must be applied at the time when the prosecution was commenced. Fosbay v. Ferguson, 2 Denio, 617. As to whether or not probable cause exists is a question of law for the court (Rawson v. Leggett, 184 N. Y. 504, 77 N. E. 662), unless there is a dispute as to the facts, in which case it becomes, as said in some of the authorities, a mixed question of law and fact, and should be submitted to the jury with proper instructions as to the law. Masten v. Deyo, 2 Wend. 424; Besson v. Southard, 10 N. Y. 235; Fagnan v. Knox, supra.

After a careful consideration of all the evidence adduced at the trial, and giving the plaintiff the benefit of every disputed question of fact, I am of the opinion that he not only failed to prove want of probable cause, but, on the contrary, the existence of probable cause was conclusively shown. There is nothing to indicate that defendant was actuated by malice, or that it had any desire to do otherwise than carry out one of the objects of its incorporation, which was to prevent persons practising medicine without being authorized to do so by the statutes of the state. It is unnecessary to determine whether the plaintiff was actually engaged in the practice of medicine within the meaning of the statute; it being sufficient for the purposes of this appeal that there was at least probable cause for the defendant's believing that he was doing so. I do not see how any person of ordinary intelligence would not have probable cause for believing that the plaintiff was engaged in the practice of medicine when the receipt of the letters from the "Department of Glanderine," offering to cure Dr. Gannett of glanders, plaintiff's subsequent visits to the hospital, his conduct there, leaving the medicine which he did with directions as to its use, and permitting himself to be called a doctor, are considered. These facts, being uncontradicted and unexplained, justified the defendant in doing what it did. The trial court should have so held and dismissed the complaint at the close of plaintiff's case, and, having failed to do that, should have directed a verdict for the defendant at the conclusion of the whole case.

If the foregoing views be correct, then it follows that the judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide event. All concur.